The **STATE** of Ohio ex rel. **BARDWELL**

v.

**OHIO ATTORNEY GENERAL** et al.

[Cite as *State ex rel. Bardwell v. Ohio Atty. Gen.*,
181 Ohio App.3d 661, 2009-Ohio-1265.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–358.

Decided March 19, 2009.

662

Brian Bardwell, pro se.

Richard Cordray, Attorney General, and Jeffery W. Clark and Lisa G. Whittaker, Assistant Attorneys General, for respondents.

---

BRYANT, Judge.

{¶ 1} Relator, Brian Bardwell, commenced this original action requesting a writ of mandamus that orders respondents, the Ohio Attorney General and the Office of the Ohio Attorney General, (1) to provide unredacted copies of alleged public records pursuant to R.C. 149.43 and (2) to organize and maintain records in such a manner that they can be made available for inspection or copying pursuant to

R.C. 149.43(B)(2). Relator further requests an award of statutory damages pursuant to R.C. 149.43(C)(1).

{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate, who issued a decision on the parties' cross-motions for summary judgment. His decision, including findings of fact and conclusions of law, is appended to this opinion.

## I. Magistrate's Decision

{¶ 3} In his decision, the magistrate concluded that (1) the key undisputed facts conclusively show that respondents did not fail to promptly prepare and make available for inspection any public record relator requested, (2) the key undisputed facts do not show that respondents failed to organize and maintain public records in a manner making them available for inspection or copying, and (3) only one e-mail among the many relator put at issue remains improperly redacted so that a writ must issue ordering a revised redaction of that e-mail. Finally, the magistrate concluded that the statutory damages should not be awarded because relator did not actually request the improperly redacted e-mail. Based on those conclusions, the magistrate determined that this court should grant in part and deny in part the cross-motions for summary judgment filed in this action and issue a writ ordering the revised redaction of the one improperly redacted e-mail.

## II. Objection

{¶ 4} Relator filed no objections to the magistrate's decision. Respondents filed one objection, contending that the magistrate wrongly concluded that it should redact an e-mail that relator never requested. Respondents' contention is persuasive.

{¶ 5} While the magistrate may be correct in concluding that the redaction was not properly done, the fact remains that relator never requested the document creating the redaction issue. As respondents succinctly state, "There can be no 'failure' of a public office to make a public record available 'in accordance with division (B),' without a request for the record under division (B)." Because relator was not denied what he requested, a writ compelling respondents to produce an unrequested document in properly redacted form is unnecessary. Cf. *State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 859 N.E.2d 948, 2006-Ohio-6714 (concluding that firefighter who never requested the documents subject of mandamus claim was not entitled to a writ because a prior request is a prerequisite to a mandamus action). Accordingly, we sustain respondents' single objection.

{¶ 6} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them, with the one noted exception. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, with the exception that relator's motion for summary judgment is denied in whole, respondents' motion for summary judgment is granted in whole, and the requested writ of mandamus is denied.

Objection sustained
and writ denied.

BROWN and CONNOR, JJ., concur.

---

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

The State of Ohio ex rel. Bardwell

v.

Ohio Attorney General et al.

No. 08AP–358

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered December 19, 2008

Brian Bardwell, pro se.

Nancy H. Rogers, Attorney General, and Jeffery W. Clark and Lisa Whittaker, Assistant Attorneys General, for respondents.

### IN MANDAMUS

### ON MOTIONS FOR SUMMARY JUDGMENT

MACKE, Magistrate.

{¶ 7} In this original action, relator, Brian Bardwell, requests a writ of mandamus ordering respondents, the Ohio Attorney General and the Office of the

Ohio Attorney General ("AG's office"), to provide unredacted copies of alleged public records pursuant to R.C. 149.43. Relator also requests an award of statutory damages pursuant to R.C. 149.43(C)(1) and requests that the writ order respondents to organize and maintain records in such a manner that they can be made available for inspection or copying pursuant to R.C. 149.43(B)(2).

**Findings of Fact:**

{¶ 8} 1. On April 29, 2008, relator filed this mandamus action. On June 3, 2008, respondents filed their answer.

{¶ 9} 2. According to the complaint and answer, on April 14, 2008, relator hand-delivered a written request to Patricia Doyle, an employee assigned to the Public Records Unit within the Constitutional Offices Section of the AG's office.

{¶ 10} 3. According to the complaint and answer, the written request of April 14, 2008 requested the following nine categories of information:

[One] Copies of all e-mails from former Attorney General Marc Dann to Jessica Utovich from November 2006 through April 2008;

[Two] Copies of all e-mails from Jessica Utovich to Marc Dann from November 2006 through April 2008;

[Three] Copies of all e-mails from Anthony Gutierrez to Vanessa Stout from November 2006 through April 2008;

[Four] Copies of all e-mails from Vanessa Stout to Anthony Gutierrez from November 2006 through April 2008;

[Five] Copies of all e-mails from Anthony Gutierrez to Cindy Stankowski from November 2006 through April 2008;

[Six] Copies of all e-mails from Cindy Stankowski to Anthony Gutierrez from November 2006 through April 2008;

[Seven] Copies of all written requests for public records made to the AG's office since March 1, 2008;

[Eight] Copies of all written responses to those requests; and

[Nine] A copy of the current record retention schedule of the AG's office.

{¶ 11} 4. According to the complaint and answer, on April 14, 2008, Doyle told relator that the requested e-mails were not immediately available.

{¶ 12} 5. According to the complaint and answer, on April 14, 2008, Doyle told relator that his requests for copies of public records were overbroad, and she worked with him to narrow their scope to an acceptable level.

{¶ 13} 6. According to the complaint and answer, on April 14, 2008, Doyle then provided relator with a copy of the AG's office record-retention schedule.

{¶ 14} 7. According to the complaint, on April 28, 2008, two full weeks after the April 14, 2008 request, Doyle e-mailed to relator a "spreadsheet used by the Office to track requests it receives for public records." The answer admits this averment.

{¶ 15} 8. According to the complaint and answer, relator returned to the AG's office on April 29, 2008, but no records were provided to relator on that day.

{¶ 16} 9. According to the complaint and answer, on April 29, 2008, relator spoke with Ada Marginean, another employee assigned to the Constitutional Offices Section. Marginean told relator that Doyle had left early for the day and that no one else in the office could assist relator with his records request.

{¶ 17} 10. According to the complaint, relator asked "that someone else be contacted to discuss the request so that a lawsuit could be averted." In their answer, respondents aver that relator told Marginean that "he had a legal pleading on his person that he was prepared to file."

{¶ 18} 11. According to the complaint and answer, on April 29, 2008, Marginean repeated that only Doyle could talk to relator about his records request.

{¶ 19} 12. On July 14, 2008, respondents moved for summary judgment. In their motion, respondents contend that they have met all of relator's requests and that this action is therefore moot.

{¶ 20} In support of their motion, respondents submitted two affidavits—one from Doyle and the other from Assistant Attorney General Lauren Lubow. Both affidavits were executed July 14, 2008.

{¶ 21} 13. In her affidavit, Doyle avers that she has held the position of paralegal in the Attorney General's Constitutional Offices Section since April 3, 2003. She is assigned the responsibility of responding to public-records requests made upon the AG's office.

{¶ 22} 14. In her affidavit, Doyle avers that on April 14, 2008, the date she received relator's written request, she provided to relator the organizational chart of the AG's office in response to relator's verbal request.

{¶ 23} 15. The Doyle affidavit further avers:

E-mail correspondence of the Attorney General's Office is not organized, or required to be organized, in the manner in which Mr. Bardwell requested it. Most of Mr. Bardwell's requests were for "all e-mails" between one person to another person, without regard to subject matter, status as a "record," project or case designation, or any other manner in which correspondence is organized and maintained in the Attorney General's Office in the ordinary course of business.

* * * Following Mr. Bardwell's delivery of his public records requests, I determined that all of the requested e-mail records (requests numbers 1 through 6) were already the subject of recently programmed searches for e-mail correspondence between the same persons, initiated by public records requests from news organizations. I added Mr. Bardwell to the list for delivery of records responsive to each of his e-mail requests, as those searches were completed and the resulting e-mail records reviewed, analyzed, and redacted.

* * * On April 28, 2008, at 3:05 p.m., I sent Mr. Bardwell by e-mail attachment a copy of an Excel spreadsheet reflecting the then-current public records requests and responses being handled by the Attorney General's Public Records Unit, fulfilling requests numbers 7 and 8. * * *

* * * On April 28, 2008, at 3:22 p.m., I sent Mr. Bardwell by e-mail attachment copies of the records of attendees at House Bill 9 public records trainings, in response to another of his public records requests made on April 13, 2008. * * *

* * * On April 30, 2008, at 2:31 p.m., I sent Mr. Bardwell an e-mail message requesting his physical mailing address (in order to send a disk containing over 2,200 records which were ready in partial response to his requests numbers 1 and 2). In this message, I advised Mr. Bardwell that, "As an update, we are still in the process of gathering and reviewing e-mails and will release the public records upon completion." * * *

* * * On April 30, 2008, at 2:57 p.m., I sent Mr. Bardwell an e-mail message advising that I would send him the disk referenced [above] in that day's mail. * * * I then placed the disk referenced [above] in the U.S. mail, addressed as provided by Mr. Bardwell.

{¶ 24} 16. In her affidavit, Lubow avers that she has been an Assistant Attorney General since October 2005. The Lubow affidavit avers:

In my capacity as an Assistant Attorney General, I am assigned responsibility for responding to public records requests made upon the Ohio Attorney General's Office.

* * * In the course of the above duties, I arranged for delivery of some of the records responsive to a set of written public records requests made by Brain Bardwell in a document received by the Attorney General's Office on April 14, 2008, and requests for the same records made by news organizations.

* * * E-mail correspondence of the Attorney General's Office is not organized, or required to be organized, in the manner in which Mr. Bardwell requested it. Most of Mr. Bardwell's requests were for "all e-mails" between one employee of the office to another employee, without regard to subject matter, status as a "record," project or case designation, or any other manner in which correspon-

dence is organized and maintained in the Attorney General's Office in the ordinary course of business. Requests in the form stated by Mr. Bardwell require that a unique search be programmed into the Attorney General's e-mail storage systems by technical personnel.

* * * Each e-mail document retrieved from the storage media of the Attorney General's Office in response to a public records request in the form requested by Mr. Bardwell (and contemporary requests from the news media) required individual review, and many of the e-mails required redaction of portions subject to exemption.

* * * On May 15, 2008, I sent Mr. Bardwell a letter enclosing a second copy of about 2,200 e-mail records previously provided to him in response to his requests numbers 1 and 2, with the explanation and legal authority for redactions made to those records. Certain non-record material had also been redacted. The letter also explained to Mr. Bardwell that no responsive records existed for specific time periods that he had requested for correspondence between certain individuals. * * *

* * * On May 28, 2008, I sent Mr. Bardwell a letter enclosing a CD containing copies of the remaining records responsive to his requests numbers 1 and 2 (2,802 e-mail records), with the explanation and legal authority for redactions made to those records. * * *

* * * On May 29, 2008, I sent Mr. Bardwell a letter enclosing a CD containing copies of approximately 100 e-mail records responsive to his requests numbers 5 and 6, with the explanation and legal authority for redactions made to those records. * * *

* * * On June 18, 2008, I sent Mr. Bardwell a letter enclosing paper copies of the three e-mail records responsive to his requests numbers 3 and 4. I noted in this letter that these records constituted fulfillment of his written requests of April 14, 2008, and asked that he contact me if he believed otherwise or had any questions about this response. * * *

{¶ 25} 17. Attached to Doyle's affidavit as an exhibit is a 39–page document identified by Doyle as an "Excel spreadsheet." This document indicates that on April 14, 2008, the AG's office received public-records requests from 18 other persons.

{¶ 26} 18. On July 16, 2008, the magistrate issued an order giving notice of a non-oral summary-judgment hearing set for August 4, 2008.

{¶ 27} 19. On August 4, 2008, relator moved for summary judgment. He also filed a memorandum in support of summary judgment and in opposition to respondents' motion for summary judgment.

{¶ 28} 20.  Relator did not submit an affidavit in support of his motion for summary judgment, nor an affidavit in opposition to respondents' motion for summary judgment.

{¶ 29} Relator did attach to his memorandum certain exhibits marked as relator's exhibits B through R.  These exhibits are copies of e-mails provided to relator by respondents that contain redactions that relator challenges in this action.

{¶ 30} Relator's exhibit S is an April 21, 2008 article posted on the Internet by the Plain Dealer.  The article indicates that Attorney General Marc Dann's office:

[R]eleased more than 2,000 e-mails between the attorney general and Utovich from September through November 2007.  The office said it held back 19 e-mails that involved either a funeral, doctors appointments for Dann or his children.

{¶ 31} Relator's exhibit T is a Tuesday, April 22, 2008 article posted on the internet by the Columbus Dispatch.  The article reads in part:

After initially denying a *Dispatch* request for the communications, Dann's office released more than 2,300 e-mails, mostly from last fall.  Spokesman Ted Hart said 19 were withheld:  11 related to funerals, four about medical appointments and four solely about Dann's children.  Dozens of others were edited to remove private phone numbers and other information.  * * *

{¶ 32} Relator's exhibit U is a Tuesday, April 22, 2008 article posted on the internet by the Youngstown Vindicator.  The article reads in part:

On Monday, the attorney general's office complied with a massive records request from many media outlets, including The Vindicator, seeking e-mails between Dann, 46, and Utovich, 28.  The office released about 2,200 e-mails between the two from last September through November.

Held back were 19 e-mails;  11 were about an "office-related funeral";  four involved appointments with doctors;  and four were to Dann's children.  * * *

{¶ 33} 21.  On August 25, 2008, respondents filed their memorandum in opposition to relator's motion for summary judgment.

{¶ 34} 22.  Also on August 25, 2008, respondents submitted unredacted copies of relator's exhibits B through R.  These unredacted copies are submitted for in camera inspection by this court.  The magistrate ordered that the unredacted copies be sealed by the clerk of courts.

{¶ 35} 23.  In support of its memorandum in opposition to relator's motion for summary judgment, respondents submitted the second affidavit of Lauren Lubow, executed August 25, 2008.  Lubow's second affidavit avers:

In my capacity as an Assistant Attorney General, I am assigned responsibility for responding to public records requests made upon the Ohio Attorney General's Office.

* * * In the course of the above duties, I arranged for delivery of some of the records responsive to a set of written public records requests made by Brian Bardwell in a document received by the Attorney General's Office on April 14, 2008, and requests for the same or similar records made by news organizations.

* * * On the documents in this case marked as Relator's Exhibits C, E, G, I, L, M, N, and O, each properly redacted portion is the name of one of the children of then-Attorney General, Marc Dann.

* * * On the documents in this case marked as Relator's Exhibits L (second redacted word), M (last redacted word), and Q (only redacted word), the redactions identified in this paragraph were of first names identical to those of the children of then-Attorney General Marc Dann. Copies of these e-mails with the inadvertently redacted words restored are attached hereto as Respondents Exhibits 11, 12, and 13, respectively, which I attest and affirm are true and accurate copies of documents on file with the Attorney General's Office.

* * * On the document in this case marked as Relator's Exhibit D, the redacted material is the cell phone contact number of Trooper Cunningham, who was assigned during the date covered by the e-mail schedule to provide security for then-Attorney General Marc Dann.

* * * On the documents in this case marked as Relator's Exhibits F and H, the redacted material concerned the name or occupation of personal medical providers.

* * * On the document in this case marked as Relator's Exhibit J, the acronym "OOCIC" stands for Ohio Organized Criminal Investigation Commission.

* * * On the document in this case marked as Relator's Exhibit P, the subject of the e-mail was a conference call to coordinate strategy in connection with a joint investigation with the New York Attorney General's Office.

* * * On the document in this case marked as Relator's Exhibit R, the subject of the redacted portion was a discussion of strategy and advice between Ohio Assistant Attorneys General and in-house counsel for the client agency.

{¶ 36} 24. On September 5, 2008, the magistrate issued an order giving notice that relator's motion for summary judgment was set for submission to the magistrate on September 22, 2008. No additional memoranda or evidence was filed by the parties in response to the magistrate's September 5, 2008 notice.

**Conclusions of Law:**

{¶ 37} The motions for summary judgment present three main issues: (1) whether relator has shown that respondents have failed to promptly prepare and make available for inspection any public record requested by relator, (2) whether relator has shown that respondents have failed to organize and maintain public records in such a manner that they can be made available for inspection or copying in accordance with R.C. 149.43(B)(1)'s requirement that public records be promptly prepared and made available, and (3) whether respondents have improperly redacted any public record requested by relator.

{¶ 38} The magistrate finds that (1) the key undisputed facts conclusively show that respondents have not failed to promptly prepare and make available for inspection any public record requested by relator, (2) the key undisputed facts do not show that respondents have failed to organize and maintain public records in such a manner that they can be made available for inspection or copying, and (3) only one e-mail among the many relator put at issue here remains improperly redacted such that a writ must issue ordering a revised redaction of that e-mail. However, the issuance of a writ of mandamus does not require an award of statutory damages because the e-mail was not actually requested by relator.

{¶ 39} Accordingly, it is the magistrate's decision that this court grant in part and deny in part both motions for summary judgment.

{¶ 40} It is the magistrate's decision that relator's motion for summary judgment be granted only to the extent that a writ of mandamus shall issue ordering respondents to properly redact one e-mail in a manner consistent with this magistrate's decision. Relator's request for an award of statutory damages is denied.

{¶ 41} It is further the magistrate's decision that respondents' July 14, 2008 motion for summary judgment be granted with the exception that a writ issue ordering a proper redaction of the one e-mail.

{¶ 42} The magistrate's decision is more fully explained below.

{¶ 43} R.C. 149.43(B) states as follows:

(B)(1) Upon request * * *, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * [U]pon request, a public office or person responsible for public records shall make copies of the requested public record available at cost and within a reasonable period of time. If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt. When making that

public record available for public inspection or copying that public record, the public office or the person responsible for the public record shall notify the requester of any redaction or make the redaction plainly visible. A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction.

(2) To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section. * * *

(3) If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied. If the initial request was provided in writing, the explanation also shall be provided to the requester in writing. The explanation shall not preclude the public office or the person responsible for the requested public record from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section.

{¶ 44} R.C. 149.43(C)(1) provides as follows:

If a person allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section. * * *
* * *

The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars. The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed. The

award of statutory damages shall be in addition to all other remedies authorized by this section.

{¶ 45} Summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The moving party bears the burden of proving that no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798.

{¶ 46} Turning to the first issue, respondents' exhibit 4 referred to in the Doyle affidavit is an April 30, 2008 e-mail from Doyle to relator, stating:

> Sorry to have missed you yesterday. I have a DVD which contains emails between Marc Dann and Jessica Utovich for the months of September, October, and November, 2007. We do not have the capabilities of emailing this information to you due to the volume. Please email me your current mailing address at your earliest convenience and I will send it to you.

> As an update, we are still in the process of gathering and reviewing emails and will release the public records upon completion.

{¶ 47} Respondents' exhibit 5 referred to in the Doyle affidavit is an April 30, 2008 e-mail from relator to Doyle in which relator thanks Doyle for the e-mail of the same date and lists his mailing address for Doyle. In her affidavit, Doyle avers that she then placed the DVD in the U.S. Mail addressed to relator. In his memorandum in support of his motion for summary judgment, relator asserts that he received the DVD on May 2, 2008. However, this assertion is unsworn.

{¶ 48} Relying upon his exhibits indicating that the news media had received copies of the e-mails between Marc Dann and Jessica Utovich as early as Monday, April 21, 2008, relator claims that the mailing of records to him on April 30, 2008, is evidence of a failure to promptly make those records available to him. As relator puts it, "it is hard to imagine how they could provide records to the press on April 21 and not find time within the next week to make one more copy of a DVD to provide to the Relator."

{¶ 49} Doyle's April 30, 2008 e-mail to relator explains to some degree why relator was not mailed the DVD earlier. Doyle's e-mail asks for relator's mailing address and explains, "We do not have the capabilities of emailing this information to you due to the volume."

{¶ 50} There is no dispute that relator forwarded his mailing address to Doyle on April 30, 2008 as requested. Relator does not dispute respondents' assertion of lacking "capabilities of emailing this information * * * due to the volume."

{¶ 51} In their memorandum opposing relator's motion for summary judgment, respondents address relator's claim of lack of promptness as follows:

Relator first argues that Respondents should have produced their e-mail release of 2,200 documents as soon as they received his request because it was a "near-identical" request to one which had already been provided to other requesters. * * * In reality, in the course of analyzing Relator's various and voluminous requests, the Public Records Unit staff noted that one of the requests was for e-mails between two employees for a lengthy period of time, and that a previous request for broader types of correspondence (including e-mail) between those same employees, although for a much shorter period of time, had been released to other requesters. Rather than wait until all of the e-mails for Relator's particular specific request had been processed, and although it contained documents beyond what Relator had requested, Respondents had another copy of the previous e-mail release made and sent to Relator, shortening the period of time which would otherwise have been required to produce his requested documents.

Had Relator made a public records request for identical previous release, he might be in a position to question whether any analysis of his request was necessary. In this case, as Relator admits, he did not ask for that particular previous release, and only the review and analysis of the staff working to satisfy his actual request revealed that a previous response could be used as a partial, expedited response.

Id. at 6–7.

{¶ 52} Respondents' argument is persuasive here because relator does not claim that his public-records request for e-mails was identical to the records released to the news media on April 21, 2008. In fact, relator refers to his requests as "near-identical requests for e-mails from the media."

{¶ 53} Presumably, relator could have earlier obtained the identical records released to the news media by simply asking for them. That he failed to do so does not translate into a lack of promptness by respondents with respect to his requests.

{¶ 54} Turning to the second issue, as previously noted, R.C. 149.43(B)(2) requires that a public office "organize and maintain public records in a manner that they can be made available for inspection or copying."

{¶ 55} In his complaint, relator alleges that respondents "have failed to comply with the Act by failing to organize and maintain their records in a manner that

would make them readily available for inspection or copying." Respondents deny relator's allegation in their answer to the complaint.

{¶ 56} In his memorandum in support of his motion for summary judgment, relator states that he "seeks a judgment ordering the Respondents to organize their records in a way that makes them available for prompt inspection." There is no further mention of this issue in relator's memorandum.

{¶ 57} In her affidavit executed July 14, 2008, Lubow avers, at paragraph 4:
E-mail correspondence of the Attorney General's Office is not organized, or required to be organized, in the manner in which Mr. Bardwell requested it. Most of Mr. Bardwell's requests were for "all e-mails" between one employee of the office to another employee, without regard to subject matter, status as a "record," project or case designation, or any other manner in which correspondence is organized and maintained in the Attorney General's Office in the ordinary course of business. Requests in the form stated by Mr. Bardwell requires that a unique search be programmed into the Attorney General's e-mail storage systems by technical personnel.

{¶ 58} Thus, Lubow's affidavit responds to the averments of relator's complaint alleging that respondents "have failed to comply with the Act by failing to organize and maintain their records in a manner that would make them readily available for inspection or copying."

{¶ 59} Relator has failed to submit any evidence disputing Lubow's averment that the public records maintained by the AG's office are appropriately organized and that some requests, such as those made by relator, require the programming of a unique search by technical personnel.

{¶ 60} Civ.R. 56(E) states as follows:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶ 61} Because relator has failed to respond to the averment of Lubow's affidavit, summary judgment shall be entered against relator on his allegation that respondents have failed to comply with the public-records act by allegedly failing to organize and maintain the records in a manner that would make them readily available for inspection or copying.

{¶ 62} The third issue, as previously noted, is whether respondents have improperly redacted any public record.

{¶ 63} As previously noted, attached to relator's motion for summary judgment are relator's exhibits B through R, which contain redacted e-mails. As previously noted, respondents have submitted to this court for in camera inspection the unredacted e-mails corresponding to relator's exhibits B through R.

{¶ 64} Before reviewing each of these exhibits, it is important to note the definition set forth at R.C. 149.011(G):

"Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

{¶ 65} In *State ex rel. Wilson–Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 693 N.E.2d 789, it was held that e-mail generated within a county sheriff's department that allegedly contained racial slurs against an employee were not "records" within the meaning of R.C. 149.011(G) because there was no evidence that they documented department policy or procedures. The e-mail was allegedly circulated to only a few co-workers and was not used to conduct sheriff's department business. Although the alleged racist e-mail was created by public employees, via a public office's e-mail system, it was never used to conduct the business of the public office and did not constitute "records" for purposes of R.C. 149.011(G).

{¶ 66} Relator's exhibit B presents a September 21, 2007 e-mail from Utovich indicating that Marc Dann wanted two employees to contact another employee who was having surgery. The magistrate finds that this e-mail is not a record under R.C. 149.011(G).

{¶ 67} Relator's exhibit C is a September 21, 2007 e-mail from Utovich to Dann regarding the scheduling of a radio appearance. The name of one of Dann's children is redacted. The magistrate finds that the identity of the child is not a record under R.C. 149.011(G).

{¶ 68} Relator's exhibit D is a September 7, 2007 e-mail from Utovich regarding Dann's schedule on September 10, 2007. The cell phone number of Trooper Cunningham is redacted.

{¶ 69} R.C. 149.433(A)(3)(a) states:

(3) "Security record" means any of the following:

(a) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage.

R.C. 149.433(B) states:

A record kept by a public office that is a security record or an infrastructure record is not a public record under section 149.43 of the Revised Code and is not subject to mandatory release or disclosure under that section.

{¶ 70} Respondents explain that Trooper Cunningham provided security for Marc Dann on the date of the schedule. Relator does not disagree. Accordingly, Trooper Cunningham's cell phone number is not a public record under R.C. 149.433(B).

{¶ 71} Relator's exhibit E is a September 28, 2007 e-mail from Utovich regarding the October 3, 2007 itinerary for one of Dann's children. The name of Dann's child is redacted. The entire e-mail is not a public record.

{¶ 72} Relator's exhibit F is a September 13, 2007 e-mail from Utovich regarding the dentist of one of Dann's children. The name of the dentist is redacted. The entire e-mail is not a public record.

{¶ 73} Relator's exhibit G is an October 2, 2007 e-mail from Utovich to Dann regarding sending something to one of Dann's children. The name of Dann's child is redacted. The entire e-mail is not a public record.

{¶ 74} Relator's exhibit H is an October 23, 2007 e-mail from Utovich containing three sentences. The third sentence concerns a medical appointment for one of Dann's children. A portion of the third sentence is redacted. The third sentence of this e-mail is not a public record.

{¶ 75} Relator's exhibit I is an October 3, 2007 e-mail from Dann to Utovich. The subject line is redacted because it concerns one of Dann's children. The entire e-mail is not a public record.

{¶ 76} Relator's exhibit J is a November 9, 2007 e-mail from "Ed Kraus" to Utovich. Dann is courtesy-copied. The e-mail concerns the agenda of a November 9, 2007 task-force meeting.

{¶ 77} The agenda for the meeting and the identities of those persons scheduled to participate in the task force meeting are redacted. The magistrate finds that this e-mail was properly redacted under R.C. 177.02(F), which protects the identity of an organized-crime task force.

{¶ 78} Relator's exhibit K is an October 24, 2007 e-mail from Utovich asking whether Dann should attend an event. The response is redacted under R.C. 149.433(A)(3)(a) as a security record.

{¶ 79} Relator's exhibit L is an October 3, 2007 e-mail from Utovich to Dann and another person. The name of one of Dann's children is redacted. The name of an employee was mistakenly redacted because her first name is the same

as the name of one of Dann's children. The mistaken redaction has been corrected by Lubow's second affidavit. The error was harmless.

{¶ 80} Relator's exhibit M is a November 30, 2007 e-mail from Dann to Utovich regarding one of Dann's children in the preparation of Dann's schedule. The name of Dann's child is appropriately redacted. An office employee who has the same name as Dann's child is mistakenly redacted. However, the mistake has been corrected by Lubow's second affidavit. This is harmless error.

{¶ 81} Relator's exhibit N is a November 16, 2007 e-mail from Dann to Utovich. The name of one of Dann's children is appropriately redacted.

{¶ 82} Relator's exhibit O is a November 30, 2007 e-mail from Utovich to Dann. The identity of one of Dann's children is appropriately redacted.

{¶ 83} Relator's exhibit P is an April 13, 2007 e-mail from Dann to Utovich regarding the scheduling of a conference call with the New York Attorney General. Portions of the e-mail are redacted. According to relator, respondents "[try] to hide the subject of a conference call with various other state attorneys general."

{¶ 84} Respondents claim that the redactions are authorized by R.C. 149.43(A)(1)(v), which exempts records "the release of which is prohibited by state or federal law." See *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 700 N.E.2d 12 (the attorney-client privilege is a state law prohibiting release of records); *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 538, 721 N.E.2d 1044.

{¶ 85} According to respondents:

The redacted portions of Relator's Exhibit P have been withheld pursuant to the Attorney Client privilege, incorporated as an exemption to the Ohio Public Records Act through O.R.C. § 149.43(A)(1)(v). The common interest privilege within the Attorney/Client privilege permits and protects communication between lawyers with separate clients who are in pursuit of a common interest. Attorney General Dann and New York Attorney General Cuomo were discussing a case in which their interests are common.

(Emphasis sic.)

{¶ 86} In Ohio, the attorney-client privilege is set forth at R.C. 2317.02 as follows:

The following persons shall not testify in certain respects:

(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client. * * *

{¶ 87} Apparently, the so-called "common interest privilege" of the attorney-client privilege is succinctly set forth in McCormick, Evidence (6th Ed.2006) 413–414, Section 91.1:

Another step beyond the joint client situation is the instance where two or more clients, each represented by their own lawyers, meet to discuss matters of common interest—commonly called a joint defense agreement or pooled information situation. Such communications among the clients and their lawyers are within the privilege. Although it originated in the context of criminal cases, the doctrine has been applied in civil cases and to plaintiffs in litigation as well as defendants. * * *

(Footnotes omitted.)

{¶ 88} The e-mail of April 13, 2007 indicates that New York Attorney General Cuomo and then Ohio Attorney General Marc Dann would hold a telephone conference call regarding a student-loan investigation. In the view of this magistrate, Ohio's attorney-client privilege is broad enough to permit the redaction of the e-mail as it was redacted by respondents. See *Owens–Corning Fiberglas Corp. v. Allstate Ins. Co.* (1993), 74 Ohio Misc.2d 174, 660 N.E.2d 765 ("common-interest doctrine" is addressed).

{¶ 89} Relator's exhibit Q is a May 16, 2007 e-mail from Utovich to Dann regarding a meeting. A name is mistakenly redacted. The name is the same as one of Dann's children. The error is corrected by Lubow's second affidavit. The error is harmless.

{¶ 90} Relator's exhibit R is an April 20, 2007 e-mail from Cynthia Frazzini to Kimberly Cocroft. The e-mail consists of four paragraphs.

{¶ 91} The first paragraph, which has no redactions, states:

Sorry for any confusion. Per my email to the AG's Office below, this is an excerpt from the Ohio Lakefront Group's weekly newsletter dated March 10, 2007 that was forwarded to us by our client (ODNR) last night. The Ohio Lakefront Group's website has not been up to date for some time, so even though this is an old newsletter, it was only recently publicly available when it was posted on the website.

{¶ 92} The second, third and fourth paragraphs are entirely redacted.

{¶ 93} Respondents claim that the redactions of the second, third, and fourth paragraphs of the e-mail are authorized by the attorney-client privilege made applicable to a public records request by R.C. 149.43(A)(1)(v).

{¶ 94} The e-mail makes clear that the Ohio Department of Natural Resources ("ODNR") is the client of the Ohio Attorney General with respect to the litigation discussed.

{¶ 95} Only the last sentence of the second paragraph appears to contain a privileged communication between the client (ODNR) and the Attorney General. That sentence reports the client's position with respect to the litigation under discussion.

{¶ 96} Accordingly, respondents must be ordered to disclose all of the second, third, and fourth paragraphs of the April 20, 2007 e-mail except the last sentence of the second paragraph. The last sentence of the second paragraph shall remain redacted.

{¶ 97} Given that respondents have failed to promptly disclose the April 20, 2007 e-mail from Cynthia Frazzini because the redactions were overbroad, the question arises as to an award of statutory damages pursuant to R.C. 149.43(C)(1).

{¶ 98} In *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, the court notes that the amendment regarding statutory damages became effective on September 29, 2007, and that it does not apply retroactively.

{¶ 99} Under R.C. 149.43(C)(1), statutory damages shall be fixed at $100 for each business day during which respondents failed to provide a properly redacted copy of a requested public record, beginning with the date of the filing of this mandamus action. Based purely upon the elapsed time, the maximum of $1,000 has been reached.

{¶ 100} R.C. 149.43(C)(1) provides that the award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed. See *State ex rel. Parker v. Lucas Cty. Dept. of Job & Family Servs.,* 176 Ohio App.3d 715, 724, 2008-Ohio-3274, 893 N.E.2d 558 (maximum damages of $1,000 awarded).

{¶ 101} While the April 20, 2007 e-mail from Cynthia Frazzini has become a subject of this action, the magistrate observes, nevertheless, that this e-mail does not appear to fit into any of the nine categories of information set forth in relator's written request of April 14, 2008. In short, relator never requested the e-mail at issue even though it was apparently provided to him by respondents in its presently redacted form.

{¶ 102} Given that the April 20, 2007 e-mail at issue was never requested by relator, it is difficult for this magistrate to see how relator can be compensated for a "lost use." In fact, the statutes' provision for "compensation for injury arising from lost use of the requested information" indicates that a request for the record is a pre-condition for a damage award.

{¶ 103} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondents to provide to relator a copy of the April 20, 2007 e-mail redacted in accordance with this magistrate's decision. It is further the magistrate's decision that this court deny relator's request for statutory damages. The motions for summary judgment are granted in part and denied in part in accordance with this magistrate's decision.