[Cite as *Dissell v. Cleveland*, 2018-Ohio-5444.]

| | |
|---|---|
| RACHEL L. DISSELL | Case No. 2017-00855PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| CITY OF CLEVELAND, | |
| Respondent | |

{¶1} Ohio's Public Records Act, R.C. 149.43, provides a remedy for production of records under R.C. 2743.75 if the court of claims determines that a public office has denied access to public records in violation of R.C. 149.43(B). The policy underlying the Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. Therefore, the Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13.

{¶2} On June 26, 2017, requester Rachel Dissell, a reporter for The Plain Dealer, sent respondent City of Cleveland an email containing the following public records request:

> For Jan 1, 2016 – Dec. 31, 2016 and for Jan. 1, 2017 through June 1, 2017 the following electronically collected EMS and Cleveland Division of Fire information:
>
> CAD (Computer Aided Dispatch) records for calls where Cleveland EMS and/or Cleveland Fire Department units were dispatched for opioid overdose calls, including heroin, synthetic opioids, fentanyl, carfentanil or opioid mixtures that include marijuana or [sic]

(Complaint at 3.) On August 9, 2017, Cleveland Public Records sent a response stating:

> In response to your public records request, there are no responsive records because the City generally cannot determine whether an incoming 911 emergency call is an opioid-related call, a prerequisite to providing the requested CAD reports.

*Id.* The same day, Dissell amended her request as follows:

> For Jan 1, 2016 – Dec. 31, 2016 and for Jan. 1, 2017 through August 1, 2017 the following electronically collected EMS/Cleveland Division of Fire or Cleveland Police Department records:

> Any records that document Cleveland EMS/ Cleveland Fire Department or Cleveland Police Department units dispatched or called to respond to opioid related overdose calls, including heroin, synthetic opioids, fentanyl, carfentanil or opioid mixtures that include marijuana or cocaine.

> Please include the date and time of the call, location or address of the call, neighborhood (if collected), on scene disposition and/or non-patient identifying narrative.

(*Id.* at 2.)

{¶3} On October 19, 2017, Dissell filed a complaint under R.C. 2743.75 alleging denial of access to public records by the City in violation of R.C. 149.43(B). The case was referred to mediation, and on July 2, 2018, the court was notified that the case was not fully resolved and that mediation was terminated. The City did not file a timely response pursuant to R.C. 2743.75(E)(2). In response to an order of the special master, the City filed an answer stating in full:

> [R]espondent * * * denies the allegations in the Complaint and further avers that all non-privileged documents have been produced. Respondent requests that this Complaint be dismissed with prejudice.

(Response). On August 10, 2018, Dissell filed a pleading describing the responsive computer-aided dispatch (CAD) records she believed the City had not produced. (Reply at 2.) On September 9 and October 12, 2018, respondent filed supplemental responses, and on October 15, 2018, Dissell filed a second reply. On November 13, 2018, the City filed responsive EMS/Fire CAD records under seal. On November 14, 2018, Dissell filed

a copy of police event summaries received from the City during litigation. On November 30 and December 4, 2018, the City filed additional supplemental responses.

**Suggestion of Mootness**

{¶4} The City asserts that the claim as it pertains to police department records is moot "because the responsive documents have been produced." (Sept. 9, 2018 Supp. Response at 1, 3.) The City has provided Dissell with "Cleveland Police Department event summaries for suspected opioid calls" for September to December 2016, and January to August 2017. (Oct. 12, 2018 Supp. Response at 2; Second Reply, Attachment.) The City explains that it provided summaries only from September 2016 forward because the police department did not code suspected drug overdose calls in its CAD system prior to that date. (*Id.*) Dissell provides no evidence to the contrary.

{¶5} In an action to enforce R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, and thereby render the claim for production moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 18-22. I find that Dissell's request for police dispatch records is moot to the extent that the responsive police department event summaries have been provided.

**Modified Request**

{¶6} No discussion or revision of a public records request during litigation relates back to the claim stated in the complaint. Even if parties agree to waive the mediation communication privilege, revision can serve only to establish admission, waiver, or mootness. As noted above, the records provided by the City during litigation did establish that a portion of the request is moot.

{¶7} However, there can be no cause of action based on failure of an office to provide records in accordance with R.C. 149.43(B) without the specific request having been made and denied prior to the complaint. *See Strothers v. Norton,* 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 14; *State ex rel. Bardwell v. Ohio Atty. Gen.*,

181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 5 (10th Dist.). Judicial resolution of the claim will thus be based on the August 9, 2017 public records request set forth in the complaint. (Reply at 2.)

**Burdens of Proof**

{¶8} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

{¶9} However, when a public office asserts an exception to the Public Records Act, the burden of proving the exception rests on the public office. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**Overly Broad or Unduly Burdensome Requests**

A request that is ambiguous or overly broad may be denied.

> If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request.

R.C. 149.43(B)(2). Accordingly, "it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Zidonis v. Columbus State Cmty. College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21-22. Determination of whether an office has properly denied a request as ambiguous or overly broad is based on the facts and circumstances in each case. *Id.* at ¶ 26.

{¶10} The City did not object to Dissell's request as overly broad prior to the filing of the complaint, advising her only that "there are no responsive records because the City generally cannot determine whether an incoming 911 emergency call is an opioid-related call, a prerequisite to providing the requested CAD reports." (Complaint at 3.) The City also did not raise overbreadth in its first response to the complaint.[1] Instead, the City endeavored to satisfy part of the request by providing Dissell with the available level of responsive data – CAD event summaries for all suspected drug overdose calls handled by Cleveland PD within the date range. (Oct. 12, 2018 Supp. Response at 2). The City likewise retrieved CAD event summaries for suspected overdose calls handled by Cleveland EMS/Fire (filed under seal), but argues that the EMS/Fire records are exempt from disclosure pursuant to HIPAA and a court protective order. Because the City chose to respond to the request, I find overbreadth inapplicable to the extent that the City has identified responsive records. I recommend that the court proceed to determine the other defenses raised.

**Improper Request (In Part)**

{¶11} A request is proper to the extent that a public office's computer is programmed to produce desired information. *State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989). Dissell requested "[a]ny records that document

---

[1] The failure to raise a defense in an office's initial explanation for denial "shall not preclude the public office or the person responsible for the requested public record from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." R.C. 149.43(B)(3).

Cleveland EMS/ Cleveland Fire Department or Cleveland Police Department units dispatched or called to respond to opioid related overdose calls." The City provided Dissell "with Cleveland Police Department event summaries for suspected opioid overdose calls" within a larger CAD report of all drug overdose calls. (Oct. 12, 2018 Supp. Response at 2; Dec. 3, 2018 Moore Aff., Exh. A.) The event summaries include Dissell's requested content as to the units dispatched, the date and time of call, and the location or address of call. The City refers to these printouts as the "responsive documents" (Oct. 12, 2018 Supp. Response at 4) which it produced in satisfaction of the request for police dispatch records. (Response; Sept. 9, 2018 Supp. Response at 1.)

{¶12} However, a request is improper to the extent it seeks a printout that the public office's computer was not programmed to produce. *Scanlon, supra*. The City attests that the general code "SDO" for suspected drug overdose does not distinguish between types of overdoses. (Sept. 6, 2018 Supp. Response at 2-3; First Carlton Aff. at ¶ 4-5; Oct. 12, 2018 Supp. Response at 8.) The City asserts that producing a list of only opioid-related calls would require the City to start with the printout of all suspected drug overdose calls and further research each call to revise the list down to those which were opioid-related. (Sept. 6, 2018 Supp. Response at 2-3; Oct. 12, 2018 Supp. Response at 9.) The City correctly asserts that it is not required to create new documents in response to a public records request. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30; *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 28-30.

{¶13} In *State ex rel. Shaughnessy v. Cleveland,* 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, Shaughnessy requested the Cleveland PD to search its incident report database and provide a list of assaults within a geographical area that included only victims who sought medical care at a hospital and were not victims of domestic violence. *Id.* at ¶ 10. As here, Cleveland could have denied and sought revision of the request because the database was not programmed to produce the additional victim

details. Instead, as here, Cleveland provided Shaughnessy with the existing list of incident reports that referred to *any* victim of assault. *Id.* at ¶ 11.

{¶14} Dissell disputes the City's inability to print out only opioid-related calls from the CAD system, stating that she "has learned that there is initially a code entered that encompasses all overdoses, after which medics on scene update the CAD and notify CPD if they administer naloxone and/or it is a confirmed opioid overdose." (Reply at 2.) However, Dissell offers no supporting evidence. Where an office attests that requested records do not exist, the requester has the burden to establish that the records do exist by clear and convincing evidence. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 22-26. Even a reasonable and good faith belief by a requester, based only on inference and speculation, does not constitute the clear and convincing evidence necessary to establish that responsive documents exist. *Id.*; *State ex rel. Gooden v. Kagel,* 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 471, ¶ 8. I find that Dissell has not shown that records specifying only opioid-related drug overdose calls existed for the time period in the requests.

{¶15} By not denying the request as overly broad and failing to provide an opportunity to revise the request, *Shaughnessey* at ¶ 16, and then identifying the best existing data (Response; Sept. 6, 2018 Supp. Response at 1, 3; Oct. 12, 2018 Supp. Response at 4), the City committed to providing records identified as responsive. *See State ex rel. Bott v. Ohio Dept. of Nat. Res.*, 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219, ¶ 19, 34-41. Cleveland produced event summaries from its CAD databases showing calls for suspected drug overdose, a feature the system is programmed to produce. I find that the request was not ambiguous or overly broad to the extent it

resulted in the City's identification of responsive event summaries that included opioid-related calls.[2]

**{¶16}** I find that denial of the portion of the request that would require an event by event review to flag opioid involvement is proper because the CAD system is not programmed to produce output limited to specific drugs. I find that the City is obligated to provide the Fire/EMS CAD event summaries that it identified as responsive to the request.

### Possible Inaccuracy of Records Does Not Create an Exception

**{¶17}** The City notes that "the use or non-use of this code is not always accurate" for several reasons. (Oct. 12, 2018 Supp. Response at 7.) The City cites no authority for the proposition that it may withhold records solely because it believes the records are inaccurate, and I find that this admission has no bearing on the request.

### Health Information Portability and Accountability Act (HIPAA)

**{¶18}** The confidentiality provisions of the federal Health Information Portability and Accountability Act (HIPAA) apply to "protected health information" obtained by a "covered entity," i.e., health plan, health care clearinghouse, or health care provider. 42 U.S.C. 1320d; 45 C.F.R. 160.103. Respondent asserts that street addresses in the event summaries must be redacted pursuant to HIPAA.

**{¶19}** At the outset, even were Cleveland EMS/Fire a HIPAA "covered entity" and the dispatch records of EMS/Fire units "protected health information," HIPAA does not supersede the Ohio Public Records Act. In *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, ¶ 25-26, the Ohio Supreme Court found that,

---

[2] Even were the court to find that the entire request is ambiguous or overly broad, it would not preclude Dissell from making a new request for these existing event summaries. The parties are encouraged to utilize the tools provided by R.C. 149.43(B)(2) through (7) in negotiating future requests. *See State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 15-20; *Bott* at ¶ 52.

> A review of HIPAA reveals a "required by law" exception to the prohibition against disclosure of protected health information. With respect to this position, Section 164.512(a)(1), Title 45, C.F.R. provides, "A covered entity may * * * disclose protected health information to the extent that such * * * disclosure is *required by law* * * *." (Emphasis added.) And the Ohio Public Records Act requires disclosure of records unless the disclosure or release is prohibited by federal law. R.C. 149.43(A)(1)(v).

> Hence, we are confronted here with a problem of circular reference because the Ohio Public Records Act requires disclosure of information unless prohibited by federal law, while federal law allows disclosure of protected health information if required by state law.

The Court noted that the secretary of the Department of Health and Human Services had explained that 45 CFR 164.512(a) was intended to preserve access to information considered important enough by state or federal authorities to require its disclosure by law, and that the federal Freedom of Information Act ("FOIA") is one law requiring disclosure of records under this exception to HIPAA protection. *Id.* at ¶ 27-28. The Court then held:

> Even if the requested [records] did contain "protected health information" as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), and even if the Cincinnati Health Department operated as a "covered entity" pursuant to HIPAA, the [records] would still be subject to disclosure under the "required by law" exception to the HIPAA privacy rule because Ohio Public Records Law requires disclosure of these reports, and HIPAA does not supersede state disclosure requirements.

*Id.* paragraph two of the syllabus, *see generally Id.* at ¶ 19-28, 34. Under the "required by law" exception, as interpreted in *Daniels*, I find that no content of the EMS/Fire event summaries is subject to withholding under HIPAA.

{¶20} Even if HIPAA were applicable, the City does not cite any federal or Ohio statute, regulation, or case law recognizing an agency providing transport/paramedic services as a "covered entity" under 45 CFR 160.103. *But see* OR2003-8500, 2003 Tex. AG LEXIS 9701. Nor has the City shown that street addresses to which units were dispatched are "individually identifiable" health information as defined in 45 CFR

160.103.[3] *Id.* Finally, the code SDO reflects only that the *caller* identifies the reason for his/her call as a suspected drug overdose (Moore Aff. at ¶ 4). It does not reflect a medical professional's history, diagnosis, prognosis, condition, or treatment information.

**{¶21}** This is not to say that street addresses could not be excepted under different circumstances. If the addresses met the definition of a "medical record" under Ohio law, R.C. 149.43(A)(1)(a) and (A)(3),[4] then they would not be "public records" R.C. 149.43(A)(1). As such, they would be exempt under *both* Ohio law and under HIPAA, because the conflict relied on in *Daniels* between the Ohio Public Records Act and HIPAA would be removed. However, under Ohio law the records of "name, address, age, location of the incident, nature and time of the call, and disposition of the patient" on an EMS run sheet are not "medical records" as defined in R.C. 149.43(A)(3). 1999 Ohio Atty.Gen.Ops. No. 006; 2001 Ohio Atty.Gen.Ops. No. 041.

**{¶22}** I conclude as a matter of law that HIPAA does not apply to any portion of the withheld records. Separately, I find that the City has not shown by clear and convincing evidence that the records would fall squarely within HIPAA definitions and terms.

### Protective Order Does Not Qualify as Exception

**{¶23}** The rights of a public records requester are normally based on the law and factual circumstances at the time of the request. *State ex rel. Schneider v. Kreiner*, 83 Ohio St. 3d 203, 208, 699 N.E.2d 83 (1998). Dissell's public records request was made on August 9, 2017. The City now asserts that a protective order it voluntarily entered into[5] over eleven months later justifies withholding the record:

---

[3] Some locations in the event summaries are only street intersections. (Second Carlton Aff. at ¶ 10, under seal.)

[4] 149.43(A)(3) "Medical record" means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment.

[5] The parties in *In re National Prescription Opiate Litigation* stipulated to and petitioned the federal court for this order. (*Id.*, Exhibit C at 1.)

On May 15, 2018, a protective order was entered in the matter captioned *In re National Prescription Opiate Litigation* pending in the United States District Court Northern Division bearing case number 1:17-md-02804, the Respondent is a party. Exhibit C. Paragraph 69 of the protective order states that "[m]aterials that have been designated as Confidential or Highly Confidential Discovery Material shall not be provided or disclosed to any third party in response to a request under any public records act..." Paragraph 10 of the protective order defines "Confidential Information" to include, among other things, overdose records. Consequently, Respondent is barred by the protective order from disclosing the requested information.

(Supplemental Response at 12-13.)

{¶24} The Ohio Supreme Court holds that "[o]nce clothed with the public records cloak, the records cannot be defrocked of their status." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378, 662 N.E.2d 334, 338 (1996). For example, the mere fact that non-exempt public records later became relevant to criminal litigation did not transform them into records exempt from disclosure. *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 316, 750 N.E.2d 156 (2001).[6] The City has not established that any exception was applicable to the withheld records prior to the Order of May 15, 2018. I find that the City was obligated at the time of the request to disclose the records, and that the requested records, "clothed with the public records cloak" were not defrocked of their status.

{¶25} Moreover, a non-disclosure clause in a voluntary agreement may not serve as a public records exception. *State ex rel. Findlay Publ. Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137 (1997) ("A public entity cannot enter into enforceable promises of confidentiality regarding public records."); *State ex rel. Sun Newspapers v. Westlake Bd. of Edn.*, 76 Ohio App.3d 170, 173, 601 N.E.2d 173, 175 (8th Dist.1991). A

---

[6] Despite this holding, properly worded statutory exceptions can protect copies of the public records of one public office when in the hands of a separate public office, *e.g.*, R.C. 109.57(D)(1)(a) (otherwise public arrest and disposition records received by BCI&I pursuant to R.C. 109.57(A)(2) and 109.60 "are not public records"); or seal existing public records in public offices, *e.g.*, R.C. 2953.31 *et seq.* (sealing of certain convictions and arrests). *See also Tingler v. Ottawa Cty. Prosecutor's Office*, Ct. of Cl. No. 2017-00248-PQ, 2017-Ohio-8451, ¶ 7-9 and cases cited therein.

contractual promise of confidentiality with respect to an otherwise public record is void *ab initio*. *Teodecki v. Litchfield Twp.*, 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-2309, ¶ 23-25. *See State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 401, 2015-Ohio-974, ¶ 32 (a writ of mandamus compelling the release of a public record is sufficient to invalidate a contrary protective order). *Compare*, *State ex rel. Cincinnati Enquirer v. Bronson*, 191 Ohio App.3d 160, 168, 2010-Ohio-5315, ¶¶ 5-6, 20 (12th Dist.) (Even where a criminal "gag order" had been issued, the issuing court must find that covered records were exempt from disclosure under one of the exceptions specified in R.C. 149.43(A)(1)(a) through (aa)).

{¶26} Further, even if a protective order could constitute a valid exception, the City is not barred by the terms of this protective order from disclosing the requested information. Protective Order ¶ 69 applies only to "[m]aterials *that have been designated as Confidential or Highly Confidential Material*." However, ¶ 10 expressly states, "*Public records* and other information or documents that are publicly available *may not be designated as Confidential Information*." Given the prohibition in ¶ 10 against designating public records as Confidential Information, and the finding here that the EMS/Fire event summaries are public records, ¶ 69 is inapplicable to the event summaries. I find that the City fails to prove that any part of the event summaries falls squarely within the wording of the protective order.

{¶27} Finally, even had the event summaries fallen within the four corners of the protective order, the City has not identified a court rule or state or federal law authorizing the order to serve as an exception to the Ohio Public Records Act. While rules of practice and procedure established under the authority of Article IV of the Ohio Constitution, are "state law" that *may* create exceptions to public records release, courts must still determine, in each case, whether these or any other court rule *does* expressly create an exception. *State ex rel. Beacon Journal Publishing Co. v. Waters,* 67 Ohio St.3d 321, 324, 617 N.E.2d 1110 (1993*).* I conclude that the City has not proven that

this stipulated protective order constitutes legal authority to withhold the requested record under any recognized exception to R.C. 149.43(B). *See generally Heisig v. MetroHealth System*, Ct. of Cl. No. 2016-00806-PQ, 2018-Ohio-4925.

{¶28} I find that the City fails to satisfy its burden to prove that a protective order can serve as an exception to the Ohio Public Records Act. I further find that the City fails to prove that the requested records fall squarely within the terms of this protective order.

### Conclusion

{¶29} Upon consideration of the pleadings and attachments, I recommend that the court order respondent to provide requester with a copy of the EMS/Fire CAD event summary records, as submitted under seal.

{¶30} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed December 14, 2018**
**Sent to S.C. Reporter 1/11/19**