[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Plunderbund Media v. Born,* Slip Opinion No. 2014-Ohio-3679.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3679

THE STATE EX REL. PLUNDERBUND MEDIA, L.L.C., *v.*

BORN, DIR. OF PUBLIC SAFETY.

**[Until this opinion appears in the Ohio Official Reports advance sheets,**

**it may be cited as *State ex rel. Plunderbund Media v. Born,***

**Slip Opinion No. 2014-Ohio-3679.]**

*Mandamus—Public records—R.C. 149.43—Security records—Threats against the governor—Writ denied.*

(No. 2013-0596—Submitted May 27, 2014—Decided August 27, 2014.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1}  We deny the request by relator, Plunderbund Media, L.L.C., for a writ of mandamus.  Plunderbund's complaint sought the disclosure of records documenting threats against the governor that were kept by respondent, Thomas P. Charles, the former Director of Public Safety.[1]  Legal counsel for the

---

[1] The current Director of Public Safety is John Born, who became director on July 31, 2013, after the complaint in this matter was filed. Under Civ.R. 25(D)(1), Born has been automatically substituted as respondent in place of the former director, Thomas P. Charles.

Department of Public Safety refused to produce any records, even redacted records, based on R.C. 149.433. That provision exempts "security records" from disclosure under the Public Records Act, R.C. 149.43 et seq. Because any records of threats made to the governor are "security records" under R.C. 149.433(A)(3)(a), they are not public records. The director of Public Safety does not have a clear legal duty to produce the requested records to Plunderbund, and Plunderbund lacks a clear legal right to those documents. We therefore deny the writ.

*Facts*

{¶ 2} Plunderbund is a media company based in central Ohio that provides original reporting, analysis, and editorial commentary on Ohio politics. Born is the Director of Public Safety.

{¶ 3} On August 14, 2012, Joseph Mismas, co-owner and managing editor of Plunderbund, sent a public-records request to the legal department of the Department of Public Safety, requesting that it provide the number of investigations the Highway Patrol had conducted regarding threats against the governor and a copy of the final version of the investigation report, but not the witness statements. Mismas indicated that a single report, if available, setting forth the type of threat and whether it was credible or resulted in charges was acceptable.

{¶ 4} Legal counsel for the department refused to produce any records, claiming, "Out of concern for the safety of public officials, * * * it has been determined that security records, such as detailed information on security, protective measures and procedures, personal threats and their analysis * * * are not public records under section 149.43 of the Revised Code." Legal counsel also stated that the department was withholding the records under R.C. 149.433(B).

{¶ 5} Mismas followed up on September 21, 2012, with further e-mails indicating that Plunderbund wanted information only on closed investigations and

2

arguing that a closed investigation is not a security record. Plunderbund requested, at a minimum, the cover sheet to each report indicating that a case was opened, the nature of the case, and the resolution, while acknowledging that information that might pose a security threat could be redacted. Counsel for the department responded that security records are not limited to open investigations and that the requested documents would therefore be withheld under R.C. 149.433. Counsel followed up with an e-mail explaining that the department was relying on R.C. 149.433(A)(3)(a) and 149.433(B) to deny the request.

{¶ 6} Plunderbund's counsel wrote to the department on November 13, 2012, arguing that some of the refused records would fall outside the security-records exception of R.C. 149.433 and that some might also fall under R.C. 149.43(A)(11) and therefore be amenable to redaction. Counsel stated that Plunderbund was not requesting information about actions taken in response to a threat but information about the threat itself, e.g., a copy of a written threat or notes taken by a person who received a telephoned threat.

{¶ 7} The department responded on December 14, 2012, stating that Plunderbund's interpretation of the public-records law was "at odds with" the applicability of the statutes. The department argued that a security record was any record that contained "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage" and that because each of the requested records contained such information, they were security records and were not subject to disclosure. The department also pointed out that the public-records law requires production only of records, not of information, such as the number of threats investigated. The department again cited R.C. 149.433(A)(3)(a).

{¶ 8} Plunderbund filed an action for a writ of mandamus to require the department to produce the requested records. The department filed an answer and

a motion for judgment on the pleadings. The court issued an alternative writ, and the parties submitted evidence and briefs.

{¶ 9} The parties jointly submitted an agreed statement of facts, and each separately filed additional evidence. Plunderbund submitted an affidavit from Joseph Mismas, its co-owner and managing editor. It also submitted an affidavit from its legal counsel with a 2006 bulletin from the Department of Administrative Services regarding the exceptions to public records in R.C. 149.433.

{¶ 10} The department has moved to strike statements in the cover page to Plunderbund's evidence, asserting that those statements are legal arguments and not evidence.

{¶ 11} The department submitted affidavits of John Born; Paul Pride, superintendent of the Highway Patrol; Richard Baron, executive director of Ohio Homeland Security, a division of the Department of Public Safety; and Patrick Kellum, a staff lieutenant with the Patrol and a member of the governor's security team.

{¶ 12} Plunderbund has filed a motion to strike all the department's affidavits, asserting that they are not relevant evidence, but are opinion, hearsay, and legal argument. The department has responded to this motion.

{¶ 13} In addition, Plunderbund has moved for in camera inspection of the documents, stating in part that evidence before the court demonstrates that the department is not acting in good faith. The department responded that the court need not see the actual documents to decide the issues here.

*Analysis*

**Motions to strike**

{¶ 14} Both the department and Plunderbund filed motions to strike various parts of the material submitted into the record. We deny the parties' motions. However, we will consider as evidence only facts and any expert testimony submitted by the parties.

4

**Mandamus**

{¶ 15} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). Thus, mandamus is the appropriate remedy for Plunderbund to use here to obtain access to a public record.

{¶ 16} Although "[w]e construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records," *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office,* 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6, a relator still must establish entitlement to the requested extraordinary relief by clear and convincing evidence, *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

{¶ 17} To be entitled to a writ of mandamus, Plunderbund must establish a clear legal right to the requested relief and a clear legal duty on the part of the department to provide it. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Plunderbund must prove that it is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

**R.C. 149.433**

{¶ 18} If a record does not meet the definition of a public record, or falls within one of the exceptions to the law, the records custodian has no obligation to disclose the document. R.C. 149.43(B) ("all public records responsive to the request shall be promptly prepared * * *"). The department claims that the records requested by Plunderbund are "security records" as defined in R.C. 149.433(A)(3) and thus are not subject to disclosure under the Public Records Act:

A record kept by a public office that is a security record or an infrastructure record is not a public record under section 149.43 of the Revised Code and is not subject to mandatory release or disclosure under that section.

R.C. 149.433(B). The department cites both R.C. 149.433(A)(3)(a) and (A)(3)(b) in support of its argument that the records documenting threats against the governor requested by Plunderbund are "security records." If the records fall under one or both of these subsections, they are security records and may be withheld by the department. R.C. 149.433(A)(3) states:

"Security record" means any of the following:

(a) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage;

(b) Any record assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism, including any of the following:

(i) Those portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel;

(ii) Specific intelligence information and specific investigative records shared by federal and international law enforcement agencies with state and local law enforcement and public safety agencies;

(iii) National security records classified under federal executive order and not subject to public disclosure under federal law that are shared by federal agencies, and other records related to national security briefings to assist state and local government with domestic preparedness for acts of terrorism.

(c) A school safety plan adopted pursuant to section 3313.536 of the Revised Code.

{¶ 19} Plunderbund argues that protecting a "public office," as the term is used in R.C. 149.433(A)(3)(a), applies only to such things as the placement of cameras, blueprints of the building, or the scheduling of security personnel. In other words, it covers records that are generated in the protection of physical facilities, not officials. The department argues that the subsection is broader, allowing it to withhold records that might subject the governor to attack, interference, sabotage, or terrorism. It asserts that protecting a "public office" includes protecting the officeholder.

{¶ 20} Indeed, a public office cannot function without the employees and agents who work in that office, and records "directly used for protecting or maintaining the security of a public office" must inevitably include those that are directly used for protecting and maintaining the security of the employees and other officers of that office.

{¶ 21} Therefore, a reasonable reading of R.C. 149.433(A)(3)(a) is that records that contain information directly used to protect and maintain the security of the governor will also be directly used to protect and maintain the security of the office of the governor.

{¶ 22} The remaining question then is whether the requested documents in this case "contain information directly used for protecting or maintaining the security of" the governor "against attack, interference, or sabotage" under R.C.

149.433(A)(3)(a). If they do, they are "security records" and properly withheld by the department.

{¶ 23} The department has submitted sworn testimony of several law-enforcement and telecommunications experts who say that investigative reports of threats to the governor contain information used for protecting or maintaining the security of the governor's office.

{¶ 24} For example, John Born's affidavit states that "[e]ach threat and investigation thereof potentially reveals security and safety violations." He states that public disclosure of the number of threats "would expose security limitations and vulnerabilities" and that such disclosure "increases the risks to the safety" of the governor and others.

{¶ 25} The affidavit of Paul Pride states that the department "needs to withhold all threat information" because releasing "even seemingly minor or insignificant pieces of information" can "reveal patterns, techniques or information" related to security.

{¶ 26} The affidavit of Richard Baron states that "[s]ecurity planning, response plans, and techniques" used by the department "detail security limitations and vulnerabilities" and are therefore "deemed security records and/or infrastructure records." Baron goes on to state that documents disclosing "the content, number or treatment of prior or current threats" contain security information that "if disclosed (even piecemeal), could be used to commit terrorism, intimidation, or violence."

{¶ 27} Patrick Kellum's affidavit states that public disclosure of a threat, even an insignificant one, may require law enforcement to change its tactics. He also states that disclosure of threats, even noncredible ones, may lead to copy-cat offenses. He also states that the disclosure of information regarding threats diminishes the effectiveness of law enforcement.

**{¶ 28}** Thus, the requested records "contain[] information directly used for protecting or maintaining the security" of a public office.  They are therefore "security records" within the meaning of the statute.

**{¶ 29}** This is not to say that all records involving criminal activity in or near a public building or concerning a public office or official are automatically "security records."  The department and other agencies of state government cannot simply label a criminal or safety record a "security record" and preclude it from release under the public-records law, without showing that it falls within the definition in R.C. 149.433.

**{¶ 30}** But here, the records at issue involve direct threats against the highest official in the executive branch of Ohio government.  Information included in these threats, according to the affidavits provided, is used for protecting and maintaining the security of the governor and his staff and family and for maintaining the secure functioning of the governor's office.  The records are therefore "security records" and exempt from disclosure as a public records under R.C. 149.433(B).

**{¶ 31}** Because we have found that records documenting threats to the governor are "security records" under R.C. 149.433(A)(3)(a), we need not view them in camera or address the remaining arguments or statutory provisions.

### Conclusion

**{¶ 32}** For all of the foregoing reasons, we deny the motions to strike and for in camera inspection of documents, and we deny the writ of mandamus.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, POWELL, FRENCH, and O'NEILL, JJ., concur.

MICHAEL POWELL, J., of the Twelfth Appellate District, sitting for KENNEDY, J.

_____

Victoria E. Ullmann, for relator.

Michael DeWine, Attorney General, and Hillary Damaser and William J. Cole, Assistant Attorneys General, for respondent.

Jennifer M. Atzberger, James L. Hardiman, and Drew S. Dennis, urging granting of the writ for amicus curiae American Civil Liberties Union of Ohio Foundation.

_____