[Cite as *Welsh-Huggins v. Jefferson Cty. Prosec. Atty.* , 2019-Ohio-473.]

| ANDREW WELSH-HUGGINS | Case No. 2018-00793PQ |
|---|---|
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| OFFICE OF THE PROSECUTING ATTORNEY, JEFFERSON COUNTY, OHIO | |
| Respondent | |

**{¶1}** Ohio's Public Records Act, R.C. 149.43, provides a remedy for production of records under R.C. 2743.75 if the court of claims determines that a public office has denied access to public records in violation of R.C. 149.43(B). The policy underlying the Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. Therefore, the Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13.

**{¶2}** On September 21, 2017, requester Andrew Welsh-Huggins, a reporter for the Associated Press, made a public records request to respondent Office of the Prosecuting Attorney, Jefferson County (Prosecutor's Office) for security camera video of a shooting incident that took place in an alley outside the Jefferson County Courthouse. The Prosecutor's Office denied the request in its entirety. (Complaint at 3-4, 9-11.) On May 7, 2018, Welsh-Huggins filed a complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). The Prosecutor's Office has since given Welsh-Huggins seven still photographs from the video which show parts of the incident. (Second Supp. Response, Exhs. 1-7.) The Prosecutor's Office has further disclosed video from a separate "Street Cam" that captured the incident.

(Response at 7.) On September 11, 2018, following unsuccessful mediation, the Prosecutor's Office filed an answer and motion to dismiss (Response). On September 26, 2018, the Prosecutor's Office filed a supplemental response, and an unredacted copy of the withheld record under seal. On September 27, 2017, Welsh-Huggins filed a reply to the September 11, 2018 response. On October 12 and November 2, 2018, the Prosecutor's Office filed second and third supplemental responses. On November 29, 2018, Welsh-Huggins filed a second reply.

**Motion to Dismiss**

{¶3} The Prosecutor's Office moves to dismiss the claim on the grounds that the entire video is 1) an infrastructure and security record, and 2) that disclosure would endanger the life or safety of law enforcement personnel or a witness. In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶4} The allegations of the complaint and contents of its attachments show that the requested video was kept as an investigatory record by the Prosecutor's Office in anticipation of a civil or criminal action or proceeding. (Complaint at 1-3.) The elements of the definitions of "infrastructure record" (discloses configuration of critical systems beyond the mere spatial relationship of building components) and "security record" (information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage) are not manifest on the face of the complaint and attachments. R.C. 149.433(A). Nor is it apparent from the complaint that disclosure of the video would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source. R.C. 149.43(A)(2)(d).

Welch-Huggins' complaint sets forth factual allegations and supporting correspondence that if proven entitles him to a finding of denial of access in violation of R.C. 149.43(B) and an order to produce the record. I therefore recommend that the motion to dismiss be DENIED, and the court determine the case on the merits.

### Contents of the Video

{¶5} The withheld video is from an exterior security camera on the Jefferson County Courthouse. (Response at 3.) The camera is permanently mounted over the courthouse door that faces Court Street Alley. (Supp. Response at 1.) Review of the video *in camera* shows that the copy submitted to the court is fisheye effect footage that covers the entrance below the camera, the sidewalk, Court Street alley, and a parking lot across the alley. There is no audio, and the camera does not track, zoom, or otherwise change field of view during the recording. The metadata visible in playback displays a date of 8/21/2017, with a time stamp that runs from 6:59:21 A.M. to 9:00:22 A.M. The shooting incident referenced in the request commences at approximately 8:04:44. The victim is visible or partly visible from 8:04:44 to 8:16:25. The shooter or his moving vehicle are visible from 7:13:40 to 7:15:55, 7:38:23 to 7:39:04,[1] and 8:04:50 to 8:05:31. The remainder of the video captures the post-shooting response of law enforcement and medical personnel and vehicles, and the presence of courthouse personnel.

### Burdens of Proof

{¶6} In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

---

[1] A segment of the video from 7:39:25 to 7:46:22, during which the shooter's car returns to the lot to remain until the attack, is missing from the record submitted under seal.

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.).

{¶7} If a public office asserts an exception to the Public Records Act, the burden of proving the exception rests on the public office. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994). Of note in considering the exceptions claimed here – where a public office claims an exception based on risks that are not evident within the records themselves, the office must provide more than conclusory statements in affidavits to support that claim. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400-404, 732 N.E.2d 373 (2000).

{¶8} A claimed violation of R.C. 149.43(B) is analyzed by the special master on the basis of "the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint." R.C. 2743.75(F)(1). In general, a violation of the Public Records Act is determined based on the statutory obligations and remedies in effect on the date the records request was made. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2018-Ohio-5133, ¶ 39-43.

**Claimed Exceptions**

{¶9} R.C. 149.43(A)(1) sets forth specific exceptions from the definition of "public record," as well as a catch-all exception for "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). The Prosecutor's Office initially withheld

the video by asserting the statutory exemptions for trial preparation records, R.C. 149.43(A)(1)(g) and (A)(4); confidential law enforcement investigatory records, R.C. 149.43(A)(1)(h) and (A)(2)(a), (b), and (d); and infrastructure and security records, R.C. 149.433(A)(1) and (2). (Complaint at 3-4, 9-11.)

{¶10} In its responses to the complaint, the Prosecutor's Office has not asserted or supported an exception for trial preparation records pursuant to R.C. 149.43(A)(1)(g) and (A)(4), and that defense is therefore waived. The remaining defenses are the statutory exception for infrastructure and security records, R.C. 149.433(A), and confidential law enforcement investigatory records the release of which would endanger the life or safety of law enforcement personnel or a witness. R.C. 149.43(A)(2)(d). (Supp. Response, *passim.*)

**Infrastructure and Security Records – R.C. 149.433**

{¶11} The Prosecutor's Office asserts that the entire two-hour video meets the definition of both an "infrastructure record" and a "security record." (Supp. Response at 1.) These terms are separately defined, and will be analyzed separately.

**Infrastructure Records**

R.C. 149.433(A) provides, in pertinent part:

"Infrastructure record" means any record that discloses the configuration of critical systems including, but not limited to, communication, computer, electrical, mechanical, ventilation, water, and plumbing systems, security codes, or the infrastructure or structural configuration of a building.

* * *

"Infrastructure record" does not mean a simple floor plan that discloses only the spatial relationship of components of the building."

In *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2018-Ohio-5111, the requester sought security video capturing a use-of-force incident in a state prison. The Department of Rehabilitation and Correction (DRC) contended that the video was an infrastructure record because

> "videos in [DRC] institutions * * * can and often do disclose the configuration of critical systems, including, but not limited to security protocols and the infrastructure or structural configuration of the institution." The critical systems that DRC identifies as being compromised by providing this video to the public include "secure fence alarms [and] entrance and exit security procedures." DRC adds that "not only do the security videos in [DRC] institutions disclose other critical systems, but the network of security cameras itself is a critical system." Further, DRC contends that "the scope and camera angles of the videos show various aspects of the infrastructure of the respective institutions, and are a window into what is not captured by the camera."

*Id.* at ¶ 10. The Supreme Court rejected these arguments, finding that the DRC security camera video did not disclose the "structural configuration of the institution." Footage of the location of doors, windows and vents showed no more than would be revealed in a simple floor plan. The court further found that the video did not disclose the configuration of a "network of security cameras," but only the location of the camera that recorded the incident. The video did not show the location of other cameras, alarms, posts, or the configuration of any other critical system. The Court found that "[a]ccordingly, DRC has not met its burden to show that the video 'falls squarely within the exception' for infrastructure records under R.C. 149.433(A)." *Id.* at ¶ 11-13.

{¶12} In *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690-PQ, 2018-Ohio-1539, the respondent claimed that body camera video capturing the transportation of an inmate through Cuyahoga County Jail corridors and elevators portrayed "intricate details of jail infrastructure and security systems that cannot be compromised, * * * including but not limited to secure operations and communications, divulge security codes, the infrastructure or structural configuration of the building." *Id.* at ¶ 16. The court found that the referenced images of individual components of the communications, computer, ventilation, security, and other systems did not in fact reveal the configuration of any system. *Id.* at ¶ 18.

{¶13} Although the Prosecutor's Office does not separate the facts it offers in support of the distinct infrastructure and security record exceptions, it emphasizes the terms *communication system*, *computer system*, and *structural configuration of a building* in its quote of the definition of "infrastructure record." (Response at 3; Supp. Response at 2; Third Supp. Response at 8.) The allegedly disclosed "configuration of critical systems" includes:

    a. The configuration of the camera to its surroundings,

    b. Location of the camera in relation to its surroundings,

    c. The technical (digital manipulation) capabilities of the video security system,

    d. The panorama of the area captured by the video camera,

    e. The ability to view certain areas from different angles,[2]

    f. The ability to zoom, rotate and isolate certain areas and subjects, and,

    g. Computerized Optical enhancement features (such as "fish eye").

(Supp. Response at 4.) The court may take notice that some or all of the features listed in c, f, and g are common to modern digital cameras in general, and security cameras in particular. None of these features disclose the "configuration" of any critical system. In common usage, the "configuration" of a system is the arrangement or relationship of its elements. Examples of records that show system configuration include electrical schematics, HVAC plans, computer network diagrams, plumbing layouts, and security code generation algorithms. *Shaffer* at ¶ 18. The mere "location," "scope," and "camera angles" of a security camera are not records disclosing the configuration of a critical system. *See Rogers* at ¶ 10-12; *Shaffer, Id.*

{¶14} Respondent asserts in addition that the video shows courthouse personnel using a nonpublic, secure entrance, and locations where the victim and other officials

---

[2] The assertion that the camera could view the same area "from different angles" is at odds with the camera's mounting in a fixed location. (Supp. Response at 1.)

park their cars.[3] (Third Supp. Response at 5.) However, any interested person may monitor these comings and goings, parking and walking, of courthouse personnel without obtaining this particular video. Indeed, rather than rely on a dated August 2017 video (and by requesting it reveal interest), a person seeking current data has the option to observe and film courthouse activity on any desired day and time, and from any public perspective. Other sources of video may be available – for example, the shooting portion of the courthouse incident was separately captured by a City of Steubenville "Street Cam" video for which no public records exception was asserted. (Second Supp. Response at 2.) The existence of the nonpublic, secured entrance is not only visible to the public but presumably appears on the building's floor plans. *See State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 25-26. Regarding respondent's assertion that the video shows where security officers were *not* located, records of system use or non-use do not disclose the "configuration" of the system. *Id.*

{¶15} None of the camera's footage reveals the configuration of a critical system. I find that the Prosecutor's Office fails to show that any portion of the county courthouse video falls squarely within the definition of an "infrastructure record."

**Security Records**

{¶16} The Prosecutor's Office asserts that the entire video is a "security record," applying the following language of R.C. 149.433(A):

As argued in this case "security record" means any of the following:

(1) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage.

(2) Any record assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism, * * *.

---

[3] The video does not appear to show Judge Bruzzese or any other official parking a car. The judge first comes into view rounding a corner of the building on foot.

This includes "portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel." (Emphasis added.) R.C. 149.433(A)(2)(a).

{¶17} As used in this exception, a "public office" includes its officials and employees. *State ex rel. Plunderbund Media, L.L.C., v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, ¶ 19-20. Examples of recognized security records include investigation files of threats made against the governor, *Id.* at 3-7, 19-31; contemporary key-card-swipe data for a county executive against whom verified threats were made, *State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 24; the cell phone number of an officer providing security to an elected official, and an email regarding the advisability of the official attending an event, *State ex rel. Bardwell v. Cordray*, 181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 69-70, 78 (10th Dist.); and a list of documented at-risk officers, a future demonstration-control staging area, and responding officer equipment. *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-00051, 2017-Ohio-4247, ¶ 31, 39-40.

{¶18} The Supreme Court cautions public agencies that the security records exception is not available based on conclusory labeling of records, but must satisfy the full statutory definition in each instance:

> This is not to say that all records involving criminal activity in or near a public building or concerning a public office or official are automatically "security records." The department and other agencies of state government cannot simply label a criminal or safety record a "security record" and preclude it from release under the public-records law, without showing that it falls within the definition in R.C. 149.433.

*Plunderbund* at ¶ 29. For example, in *State ex rel. Miller v. Pinkney*, 149 Ohio St.3d 662, 2017-Ohio-1335, 77 N.E.3d 915, the Cuyahoga County sheriff's office labeled all offense and incident reports in which the county executive was identified as a reportee,

complainant, or victim, as "security records." After examination *in camera,* the Supreme Court determined that the reports were "not security records and are subject to release with the redaction of exempt information." *Id.* ¶ 1-4, Appendix (documents appear to contain innocuous information, unfounded threats, and/or were several years old). In *State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 65, the Supreme Court found that the Cuyahoga County fiscal officer had failed to establish that master CD's documenting procedure and operation to make backup copies of instruments recorded were "security records." In *FitzGerald* at ¶ 6-8, 24, Cuyahoga County withheld key-card-swipe data for the one employee against whom verified threats had been received, and correctly released the same data for other employees who had not received threats. The Court then determined that when the threatened employee left his position, the exception expired and his data were no longer "security records." *Id.* ¶ 27-28, 30.

{¶19} In *Plunderbund*, DPS provided the detailed testimony of several law-enforcement and telecommunications experts connecting the disclosure of that information to future risks to the governor and his successors. *Plunderbund* at ¶ 22-31. Here, respondent does not provide testimony from any law-enforcement, security, or technology experts. Although Prosecuting Attorney Hanlin attests to "facts" in her pleadings, she claims no specialized knowledge, skill, experience, training, or education regarding evaluation of future security risks. Regarding the technical aspects of the courthouse security video system, Hanlin claims only a layman's understanding. (Third Supp. Response at 1.)

{¶20} Of most significance, respondent does not demonstrate that information in the video is being "*directly used* for protecting or maintaining the security of a public office against attack, interference, or sabotage." The video is not a planning, training, investigatory, or policy document maintained by the office for security purposes. (Supp. Response at 6.) The video contains no audio, and therefore no verbal commands,

codes, perceptions, reasoning, choices, plans, or explanations are conveyed. While relevant law enforcement and security offices likely created after-action reports and applied lessons learned to their training and protocols, the courthouse video itself does not contain specific and unique vulnerability assessments or response plans. There is no evidence presented that the video recording at issue actually constitutes "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," or was "assembled, prepared, or maintained by a public office * * * to prevent, mitigate, or respond to acts of terrorism."

{¶21} Respondent posits instead that the visible activity in the video could be reverse-engineered to reveal agency security planning, policies, techniques, personnel, equipment, and capabilities. (Supp. Response at 4-5.) This is analogous to claiming that a football team's game plan can be discerned from silent video of one play. In *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2018-Ohio-5111, the Supreme Court considered exactly the same arguments:

> DRC contends that it is "the content that is captured in the security video footage—the capabilities and vulnerabilities of [DRC's] security protocols—which renders the records exempt from public disclosure." DRC Northwest Regional Director Bobby states that "[s]ecurity videos—particularly those that capture a response to a use of force incident—show the institution's plan of attack and security features that the institution has in place so that the disturbance can be interrupted as quickly and safely as possible." DRC reasons that "[p]ublic dissemination of the areas of Ohio prisons that are not capable of being monitored by security video would allow nefarious acts of violence to occur outside the security camera's scope."

*Id.* at ¶ 16. The Court found that DRC had not met its burden to show that the video fell squarely within the security record exception:

> First, the evidence it offers to support the applicability of the claimed exception pales in comparison to the evidence we considered in *Plunderbund*. Here, DRC has provided only two affidavits, one of which merely concludes that "it is [DRC] policy that security videos within correction institutions are not public records, and are therefore not

disclosed in response to public records requests." The Bobby affidavit contains more information regarding the applicability of the exception, yet even his testimony is general and insufficient to meet DRC's burden in this case. Beyond these bare allegations, DRC has not attempted to explain how the video recording at issue actually constitutes "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," or was "assembled, prepared, or maintained by a public office * * * to prevent, mitigate, or respond to acts of terrorism." R.C. 149.433(A)(1) and (2).

*Id*. at ¶ 19. After noting that even an initially proper withholding as a security record does not establish the exception in perpetuity, the Court continued:

DRC has not provided evidence showing, for instance, that this 2015 video recording is being used in a current investigation regarding the incident depicted in it or that the video discloses any current security response plans or other protocols. And the video footage Rogers has requested is from a single video camera on a specified day and time and does not contain any information as to the network of cameras operating in and around the prison. In short, DRC has not offered any analysis as to why the video requested in this case fits squarely within the exception. And as we made clear in *Plunderbund*, every record claimed under the security-record exception to disclosure must be considered separately. For these reasons, we hold that the requested video is not a security record under R.C. 149.433(A) and thus not exempt from disclosure under R.C. 149.43.

*Id*. at ¶ 21. Respondent here likewise provides no evidence showing that the 2017 courthouse video is being used in any investigation regarding the incident, or that it discloses any current security response plans or other protocols. The footage is from a single video camera on a single day and time, and does not contain information as to the network of courthouse cameras. Respondent asserts without detail that the silent images of officers, court personnel, and others moving in the field of view reveal the "manner, means, method, and procedure" of each individual and agency. (Second Supp. Response, as submitted under seal, at 6-9.) Respondent alleges even less plausibly that the video "reveals shortcomings and vulnerabilities of the response

procedures employed by law enforcement agencies." (Id. at 5.) These conclusory assertions are not supported by expert testimony, or by review of the video *in camera*. Instead, like countless other public and private videos of violent incidents, responses, and crime scenes, this is simply an isolated recording of one incident unfolding.

{¶22} The nebulous allegation that information in the video "could be used" to plan an attack, without evidence that the information is being "directly used for protecting or maintaining the security of a public office" against those threats, is not sufficient. *Rogers* at ¶ 16-18. I conclude that respondent has failed to meet its burden to prove that any portion of the video is exempt from disclosure as a security record.

### Confidential Law Enforcement Investigatory Records (CLEIRs) Physical Safety Exception

{¶23} Under R.C. 149.43(A)(1)(h), "public record" does not include confidential law enforcement investigatory records (CLEIRs). R.C. 149.43(A)(2) defines CLEIRs, in pertinent part, as follows:

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> * * *
>
> (d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

The CLEIRs exception involves a two-part test; first, whether a record "pertains to a law enforcement matter" of a criminal, quasi-criminal, civil, or administrative nature, and second, whether release of the record would create a high probability of disclosure of information detailed in subdivisions (2)(a) through (d). *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 25.

### Records Pertaining to a Law Enforcement Matter of a Criminal Nature

{¶24} A record "pertains to a law enforcement matter of a criminal nature" if it arises from suspicion by an agency with authority to investigate the violation of a criminal law. *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 39. Because the shooter died at the scene of the shooting, the possibility of a criminal investigation into his actions was obviated. However, the Prosecutor's Office noted that a separate and unspecified "criminal" investigation was undertaken for an unspecified period of time. (Supp. Response at 6.) In the absence of specific evidence regarding the nature of that investigation, respondent arguably fails to satisfy the first prong of the CLEIRs test.

{¶25} The special master takes notice that a use of deadly force investigation is normally conducted by the employing law enforcement agency under the facts and circumstances present here. Courts have determined that these routine investigations of officer use of deadly force "pertain to a law enforcement matter of a criminal nature" and thereby satisfy the first CLEIRs prong. *Zuern v. Leis*, 56 Ohio St.3d 20, 564 N.E.2d 81 (1990). Even assuming *arguendo* that this was the nature of the referenced investigation, respondent must still satisfy the second prong of the CLEIRs test.

### Information That Would Endanger the Life or Physical Safety of a Crime Victim or Witness

{¶26} The Prosecutor's Office asserts that portions of the video fall under subdivision (A)(2)(d), the "physical safety" CLEIRs exception:

> "Confidential law enforcement investigatory records" includes "any record * * * the release of [which] would create the high probability of disclosure of * * * (d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."

R.C. 149.43(A)(2)(d). In support of this claim, respondent offers the following speculation:

> Inasmuch as the would-be assassin (Nate Richmond) had known gang affiliations and a criminal record of violence, divulging to the public the identities of people who responded to the shooting would endanger the life or safety of law enforcement personnel or a witness, within the meaning of R.C. 149.43(A)(2), in that:
>   a. Local gang members would be able to recognize and identify the judge, and the probation officer and the courthouse security officers who responded in a manner which led to the death of a member of a gang; and,
>   b. Law enforcement and security personnel could be identified, located and targeted for retaliation.

(Response at 6.) The Prosecutor's office provides no evidence of any related present threat to the life or physical safety of the victim, the probation officer who neutralized the shooter, or any witness. Where a public office claims an exception based on risks that are not evident within the records themselves, the office must provide more than conclusory statements in affidavits to support the claim. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400-404, 732 N.E.2d 373 (2000).

{¶27} More than bare allegations are necessary to satisfy the burden of proof to show that a record would disclose information that would endanger the life or physical safety of a particular person. *State ex rel. Nelson v. Cleveland Police Dept.,* 8th Dist. Cuyahoga No. 62558, 1992 Ohio App. LEXIS 4134, *5-7 (Aug. 6, 1992); *State ex rel. Jenkins v. Cleveland*, 82 Ohio App.3d 770, 785, 613 N.E.2d 652 (8th Dist.1992). Physical safety exceptions may not be asserted beyond the person(s) demonstrably at risk, or after the risk has abated. *State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 6-8, 24, 27-28, 30; *State ex rel. Quolke v. Strongsville City Sch. Dist. Bd. of Educ.,* 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30*, ¶ 30; *Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 16-33 (proof of threat for various exceptions).

{¶28} A year and a half has passed since the shooting incident in this case. Respondent offers only unsupported speculation, and has not submitted any evidence by affidavit or otherwise of an actual threat of physical violence directed at any person involved in the incident. *See State ex rel. Martin v. Cleveland*, 8th Dist. Cuyahoga No. 60977, 1992 Ohio App. LEXIS 98, *22-24 (Jan. 8, 1992); *Lippitt v. Kovacic*, 70 Ohio App.3d 525, 530, 591 N.E.2d 422 (8th Dist.1991); *Conley v. Corr. Reception Ctr.*, 141 Ohio App.3d 412, 414-416, 751 N.E.2d 528 (4th Dist.2001); *Gannett GP Media, Inc., supra*.

{¶29} Further, the persons involved in or responding to the incident were all visible to the public at the time, and a number were identified in media reporting. Photographs of the judge are available online. *See State ex rel. Vindicator v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 36 (In light of previous releases of case records, and internet access to the same and similar information, a sealing order "would do little, if anything, to protect the privacy of the defendants"); *Besser, supra*, at 403, (information readily ascertainable from other sources is not "trade secret"); *State ex rel. Jenkins v. Cleveland, supra*, (some of the information that would allegedly endanger life or physical safety "is available through other public records").

{¶30} I find that bare speculation that persons unknown might harbor ill-will to one or more persons in the video does not meet respondent's burden of proof. I find that respondent fails to allege the elements of the physical safety exception, fails to provide affidavit or other evidence of actual physical threat or risk, and therefore fails to meet its burden of showing that release of any part of the video would endanger the life or physical safety of any person.

**Photographs of Peace Officers Having Undercover Assignments**

{¶31} Although not asserted by the Prosecutor's Office, the court may take notice that "a photograph of a peace officer who holds a position or has an assignment that may include undercover or plain clothes assignments as determined by the peace

officer's appointing authority" may be redacted pursuant to R.C. 149.43(A)(1)(p) and (A)(7)(g). The exception is strictly limited to "peace officers" as defined in R.C. 149.43(A)(7)(g), and only to those peace officers who are shown to hold a position or have an assignment "that may include undercover or plain clothes positions or assignments as determined by the peace officer's appointing authority."

{¶32} I recommend the court find that respondent may redact the photographic image of any peace officer who it confirms with the peace officer's appointing authority held a position or had an assignment that may include undercover or plain clothes assignments at the time of the public records request or at present.

**Extent of Redaction**

Public offices may remove only specifically exempt information from records:

> If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record *shall make available all of the information within the public record that is not exempt.*

(Emphasis added.) R.C. 149.43(B)(1).[4] *See State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988) paragraph four of the syllabus, and its progeny. As a practical matter, withholding exempt information while making the remaining information available is accomplished by redaction:

> "Redaction" means obscuring or deleting any information that is exempt from the duty to permit public inspection or copying from an item that otherwise meets the definition of a "record" in section 149.011 of the Revised Code.

R.C. 149.43(A)(11). Redaction must be restricted to avoid portions that are not entitled to protection, *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2018-Ohio-5133, ¶ 20-22, unless the exempt record is "inextricably intertwined" with the entire remainder. *See generally Narciso v. Powell Police Dept.*, Ct.

---

[4] As amended by Sub. H.B. 9, 126th Gen. A. (2006) (eff. Sept. 29, 2007.)

of Cl. No. 2018-01195PQ, 2018-Ohio-4590, ¶ 8-14, and cases cited therein. *See also Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group,* 2013-Ohio-5736, 6 N.E.3d 631, ¶ 29-31 (8th Dist.), affirmed by *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group,* 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 4, 12. Video recordings are subject to the same limits to redaction as text records. Where a video recording is not exempt in its entirety, only the portions that fall squarely within a public records exception may be withheld. *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 45-50; *Patton v. Solon City School Dist.*, Ct of Cl. No. 2017-00570-PQ, 2017-Ohio-9415, ¶ 7-15; *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690-PQ, 2018-Ohio-1539, ¶ 46, 53. In this case, redaction is limited to close cropping of photographic images of peace officers who hold a position or have an assignment that may include undercover or plain clothes positions or assignments as determined by and confirmed with the peace officer's appointing authority.

{¶33} The parties are free to negotiate redaction scope and technique that could make the process both less burdensome for respondent and less restrictive to the requester, such as redacting only the faces of peace officers subject to the exception.

**Respondent Is Required To Copy Records In Any Available Format**

{¶34} Respondent asserts that it is not required to "create new records" by exporting a copy of the video in a format that can be viewed on standard video viewing software. (Third Supp. Response at 4.) However, respondent is required to "organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section." R.C. 149.43(B)(2).[5] Fortunately, respondent satisfies this obligation in that its video software can export a copy of the courthouse video in either a common public format, or in native format. (*Id.*

---

[5] This includes maintaining public records in a manner that they can be properly redacted as necessary.

at 3.) Viewable export is the manner in which video records are made available by a public office for copying in accordance with R.C. 149.43(B).

> Further,

> The public office or the person responsible for the public record shall permit that person to choose to have the public record duplicated upon paper, upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record. When the person seeking the copy makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by the person seeking the copy.

R.C. 149.43(B)(6). If a computer is already programmed to produce requested output, the output is deemed to already exist for the purposes of a R.C. 149.43 request. *State ex rel. Scanlon v. Deters,* 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989), *overruled on other grounds.*

{¶35} The public is entitled to copies of electronic public records in any format that the public office's equipment is programmed to export. *See Parks v. Webb*, Ct. of Cl. No. 2018-00995PQ, 2018-Ohio-1578, ¶ 10-17, and cases cited therein. The public is also entitled to the full functionality of the record in its native format. *Id.* Thus, Welsh-Huggins is entitled to a copy of the courthouse video according to his preference among the available export formats. Respondent is obligated to provide copies so that they may be viewed with the full functionality of the native format record, including providing viewing software capable of full-feature review. If providing requester with a capable viewer would violate the software license, respondent would alternatively remain obliged to allow requester to inspect the video on its premises through its equipment and software.

**Conclusion**

{¶36} Upon consideration of the pleadings, attachments, and responsive records filed under seal, I recommend that the court issue an order GRANTING Welsh-Huggins' claim for production of the withheld video, subject to redaction of specific portions excepted from release by R.C. 149.43(A)(7)(g). I further recommend the court order that Welsh-Huggins is entitled to recover from respondent the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶37} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

**Filed January 28, 2019**
**Sent to S.C. Reporter 2/12/19**