[Cite as *Welsh-Huggins v. Office of the Pros. Atty.*, 2019-Ohio-964.]

| | |
|---|---|
| ANDREW WELSH-HUGGINS | Case No. 2018-00793PQ |
| Requester | Judge Patrick M. McGrath |
| v. | DECISION AND ENTRY<br>ADOPTING RECOMMENDATION<br>OF SPECIAL MASTER |
| OFFICE OF THE PROSECUTING ATTORNEY, JEFFERSON COUNTY, OHIO | |
| Respondent | |

{¶1} Respondent Office Of The Prosecuting Attorney, Jefferson County, Ohio (Prosecutor's Office), through Jane Hanlin, prosecuting attorney of Jefferson, County, Ohio, objects to a special master's report and recommendation (R&R) issued on January 28, 2019.

## I. Background

{¶2} Pursuant to R.C. 2743.75(D), requester Andrew Welsh-Huggins filed a complaint against the Prosecutor's Office, alleging a denial of access to public records. Welsh-Huggins asserted that, on August 21, 2017, he requested a copy of an external courthouse surveillance video showing the shooting of Judge Joseph J. Bruzzese, Jr., and Nate Richmond. Welsh-Huggins further asserted that, on August 22, 2017, Prosecuting Attorney Jane Hanlin rejected his public records request, citing several exemptions under the Ohio Public Records Act.

{¶3} The court appointed an attorney as a special master in the cause. The court, through the special master, referred the case to mediation. After mediation failed to successfully resolve all disputed issues, the court returned the case to the special master's docket. The Prosecutor's Office filed a response and moved to dismiss Welsh-Huggins' complaint. The special master determined that he required additional information from the Prosecutor's Office. The special master ordered the Prosecutor's

Office to file certain documents and records under seal and the special master also ordered additional filings by the parties.

{¶4} On January 28, 2019, the special master issued a R&R wherein he recommended (1) denying the Prosecutor's Office's motion to dismiss, (2) granting Welsh-Huggins' "claim for production of the withheld video, subject to redaction of specific portions excepted from release by R.C. 149.43(A)(7)(g)," and (3) issuing an order that Welsh-Huggins "is entitled to recover from [the Prosecutor's Office] the costs associated with this action, including the twenty-five-dollar filing fee." (R&R, 3, 19-20.)

## II. Law and Analysis

{¶5} R.C. 2743.75(F)(2) governs objections to a report and recommendation issued by a special master of this court relative to a public-records dispute brought under R.C. 2743.75. Pursuant to R.C. 2743.75(F)(2), either party "may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested." And, according to R.C. 2743.75(F)(2), if either party timely objects, the other party "may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested."

{¶6} In this instance, although the Prosecutor's Office filed its objections within seven business days after receiving the special master's R&R, the objections are procedurally irregular for at least two reasons: (1) Hanlin failed to serve the objections on defense counsel who appeared on Welsh-Higgin's behalf in this case (attorneys Greiner and Ford), and (2) Hanlin failed to send a copy of the objections on defense counsel by certified mail, return receipt requested, as required by R.C. 2743.75(F)(2). The Prosecutor's Office's objections also are irregular because the Prosecutor's Office's objections reference matters that were discussed during mediation, matters that are presumptively privileged. (Objections, 5.) *See* R.C. 2710.03 (privilege against

disclosure of a mediation communication); *see also* R.C. 2710.04 (waiver and preclusion of privilege) and 2710.05 (exceptions to privilege). Despite the irregularities of the Prosecutor's Office's filing, in the interest of justice the court will consider the Prosecutor's Office's objections.

{¶7} Because Welsh-Huggins, through counsel, timely filed a response and served the response by certified mail (absent an indication whether a return receipt was requested), the court finds that Welsh Huggins' response substantially complies with procedural requirements contained in R.C. 2743.75(2).

**A. <u>Prosecutor's Office's Objections</u>**

{¶8} The Prosecutor's Office asserts the following objections to the special master's R&R:

(1) The Special Master's Report and Recommendations erroneously ignore the plain statutory language which makes the subject video an **"Infrastructure Record,"** as defined by R.C. 149.433(A), as a matter of law; and,

(2) The Special Master's Report and Recommendations erroneously ignore R.C. 149.433(B)(2), which provides that an **"Infrastructure Record"** is *not a public record* and is *not subject to mandatory release or disclosure,"* as a matter of law; and

(3) The Special Master's Report and Recommendations erroneously ignore the plain statutory language which makes the subject video a **"Security Record,"** as defined by R.C. 149.433(A)(1), as a matter of law; and

(4) The Special Master's Report and Recommendations erroneously ignore R.C. 149.433(B)(1), which provides that **"Security Record,"** is *not a public record* and is *not subject to mandatory release or disclosure.,"* as a matter of law; and,

(5) The Special Master's Report and Recommendations erroneously ignore the fact that the subject video recording is "directly used for protecting and maintaining the security of a public office" and it is "directly used for protecting and maintaining the security of the employees and other officers of that office." Therefore, the record is a "Security Record" within

the meaning of R.C. 149.433(A)(3) and the holding in *State ex rel. Plunderbund Media v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, ¶¶ 18-32 (2014); and,

(6) The Special Master's Report and Recommendations erroneously ignore the fact that the subject video recording involves direct threats against the highest judicial officials in County Government and is used for protecting and maintaining the security of judges, other elected office-holders and their staffs; and for maintaining the secure functioning of the county offices. The record is, therefore, a "Security Record" and exempt from disclosure under R.C. 149.433(B) and the holding in *State ex rel. Plunderbund Media v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, ¶¶ 18-32 (2014); and,

(7) Divulging the subject video (even modified as recommended by the Special Master) would constitute the disclosure of an "Infrastructure Record" and "Security Record"; and,

(8) The Special Master's Report and Recommendations would erroneously and unlawfully require the Respondent to *perform a service*, by which the Respondent would have to create a *new record*, contrary to law; and,

(9) The Special Master's Report and Recommendations would erroneously and unlawfully require the Respondent to *perform a service*, by which the Respondent would have to *compile information* from an existing record in order to create a new record, contrary to law.

(10) Even if the Respondent were to export and modify the subject video, as recommended by the Special Master, the resultant new product would still be an "Infrastructure Record" and/or "Security Record," which is not subject to mandatory disclosure.

(Emphasis sic.) (Objections, 1-2.)

{¶9} Additionally, in the body of the written objections, the Prosecutor's Office asserts that the special master shifted the burden of proof (1) by requiring the Prosecutor's Office to show that any portion of the county courthouse video fell squarely within the definition of an infrastructure record and (2) by noting that Prosecutor's Office provided no evidence that the requested courthouse video was being used in any

investigation of the shooting or that there was a related present threat to the physical safety of the shooting victims, the probation officer who neutralized the shooter, or any witness. (Objections, 6-7.) The Prosecutor's Office further contends that the special master denied procedural due process to the Prosecutor's Office by not providing the Prosecutor's Office with an opportunity for an evidentiary hearing. (Objections, 8.)

**B. Discussion**

{¶10} Based on the court's independent review, the court finds that the special master did not improperly shift the burden of proof for proving that an exception against disclosure applies to the requested record. Under Ohio case law a public-records custodian has the burden to establish the applicability of an exception. *See State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus (holding that, exceptions to disclosure under the Public Records Act, R.C. 149.43, "are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception").

{¶11} Moreover, as to the Prosecutor's Office claims of a violation of procedural due process, the court recognizes that due process "is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 22. A review of R.C. 2743.75 discloses that the General Assembly has not included a provision for an evidentiary hearing when a claim is brought under R.C. 2743.75(D). Nonetheless, the court concludes that the court lacks jurisdiction to determine whether the special master denied procedural due process to the Prosecutor's Office. *See You v. Northeast Ohio Med. Univ.*, 10th Dist. Franklin No. 17AP-426, 2018-Ohio-4838, ¶ 35 (noting that the Tenth District Court of

Appeals has consistently held that claims alleging violations of due process or equal protection, or both, are not actionable in this court).

{¶12} The special master described the disputed video, stating: "Review of the video *in camera* shows that the copy submitted to the court is fisheye effect footage that covers the entrance below the camera, the sidewalk, Court Street alley, and a parking lot across the alley. There is no audio, and the camera does not track, zoom, or otherwise change field of view during the recording. * * * The shooting incident referenced in the request commences at approximately 8:04:44. * * * The remainder of the video captures the post-shooting response of law enforcement and medical personnel and vehicles, and the presence of courthouse personnel." (R&R, 3.)

{¶13} As used in R.C. 149.433, an infrastructure record "means any record that discloses the configuration of critical systems including, but not limited to, communication, computer, electrical, mechanical, ventilation, water, and plumbing systems, security codes, or the infrastructure or structural configuration of a building." R.C. 149.433(A). An infrastructure record "includes a risk assessment of infrastructure performed by a state or local law enforcement agency at the request of a property owner or manager," R.C. 149.433(A), but the term infrastructure record "does not mean a simple floor plan that discloses only the spatial relationship of components of the building." R.C. 149.433(A).

{¶14} Based on the court's independent review, the court is not persuaded by the Prosecutor's Office's claim that the disputed video constitutes an infrastructure record. Rather, in the court's view, the fisheye effect footage that covers the entrance below the camera, a sidewalk, an alley, and a parking lot across the alley does not constitute an infrastructure record for purposes of R.C. 149.433(A).

{¶15} Neither does the court conclude that the disputed video constitutes a security record for purposes of R.C. 149.433(A). Pursuant to R.C. 149.433(A), as used in R.C. 149.433, the term "security record" means any of the following:

(1) Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage;

(2) Any record assembled, prepared, or maintained by a public office or public body to prevent, mitigate, or respond to acts of terrorism, including any of the following:

(a) Those portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel;

(b) Specific intelligence information and specific investigative records shared by federal and international law enforcement agencies with state and local law enforcement and public safety agencies;

(c) National security records classified under federal executive order and not subject to public disclosure under federal law that are shared by federal agencies, and other records related to national security briefings to assist state and local government with domestic preparedness for acts of terrorism.

(3) An emergency management plan adopted pursuant to [R.C. 3313.536].

{¶16} Notably, the special master stated: "The video contains no audio, and therefore no verbal commands, codes, perceptions, reasoning, choices, plans, or explanations are conveyed." (R&R, 10.) As the Ohio Supreme Court stated in *State ex rel. Plunderbund Media v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, ¶ 29: "This is not to say that all records involving criminal activity in or near a public building or concerning a public office or official are automatically 'security records.' The department and other agencies of state government cannot simply label a criminal or safety record a 'security record' and preclude it from release under the public-records law, without showing that it falls within the definition in R.C. 149.433." The court

determines that the special master's conclusion that the Prosecutor's Office "has failed to meet its burden to prove [by a preponderance of the evidence] that any portion of the video is exempt from disclosure as a security record" (R&R, 13) is not error.

{¶17} Finally, the Prosecutor's Office claims that the special master's R&R unlawfully requires the Prosecutor's Office to compile information, which results in an infrastructure record or security record, is not persuasive.  In the R&R the special master urged the court to find that the Prosecutor's Office "*may* redact the photographic image of any peace officer who it confirms with the peace officer's appointing authority held a position or had an assignment that may include undercover or plain clothes assignments at the time of the public records request or at present."  (Emphasis added.) Thus, the special master's recommendation for redaction is permissive or discretionary in nature.

### III. Conclusion

{¶18} For reasons set forth above, the court holds that the Prosecutor's Office's objections to the special master's R&R of January 28, 2019 should be overruled.  The court further holds that special master's report and recommendation should be adopted.


PATRICK M. MCGRATH
Judge

| | |
|---|---|
| ANDREW WELSH-HUGGINS | Case No. 2018-00793PQ |
| Requester | Judge Patrick M. McGrath |
| v. | <u>ENTRY ADOPTING RECOMMENDATION OF SPECIAL MASTER</u> |
| OFFICE OF THE PROSECUTING ATTORNEY, JEFFERSON COUNTY, OHIO | |
| Respondent | |

{¶19} For the reasons set forth in the decision filed concurrently herewith, and upon independent review of the objected matters, the court OVERRULES respondent's objections to a special master's report and recommendation of January 28, 2019. The court adopts the special master's report and recommendation as its own, including the findings of fact and conclusions of law contained in it. The court orders respondent to forthwith permit requester to inspect or receive copies of the requested video. In accordance with the special master's report and recommendation, respondent may redact the photographic image of any peace officer who it confirms with the peace officer's appointing authority held a position or had an assignment that may include undercover or plain clothes assignments at the time of the public records request or at present. Requester is entitled to recover from respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that are incurred by requester, but requester is not be entitled to recover attorney's fees. Judgment is

rendered in favor of requester. Court costs are assessed against respondent. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

**Filed February 20, 2019**
**Sent to S.C. Reporter 3/20/19**